Archie Laverne RANDOLPH, Jr.,
Appellant (Plaintiff),

v.

GILPATRICK CONSTRUCTION COM-
PANY, INC., a Wyoming corporation;
State of Wyoming and the State High-
way Commission of Wyoming, Appel-
lees (Defendants).

No. 84–180.

Supreme Court of Wyoming.

June 26, 1985.

Rehearing Denied Aug. 26, 1985.

Daniel E. White, Cheyenne, for appellant.

Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for appellee Gilpatrick Const. Co., Inc.

A.G. McClintock, Atty. Gen., and Lawrence A. Bobbitt, III, Senior Asst. Atty. Gen., Cheyenne, for appellee State of Wyo.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal results from a summary judgment granted in favor of appellees in a negligence action which arose from a single car accident in a construction area. Appellant Archie Laverne Randolph, Jr., was injured when his car went out of control and struck a pile of railroad ties while he was driving through a bridge construction area on November 21, 1976.

Appellant initially filed suit on November 19, 1980, against Michael Hays, a Riverton police officer, the City of Riverton, Gilpatrick Construction Company, Inc., and the State of Wyoming, alleging liability for property damage and personal injuries sustained in the car accident. The state was dismissed by stipulation on January 19, 1981. The trial court dismissed the complaint against the remaining defendants on September 20, 1982, finding that appellant had failed to prosecute the case for a period in excess of six months. Appellant sought review of the dismissal in this court, and we reinstated the case in *Randolph v. Hays*, Wyo., 665 P.2d 500 (1983).

In 1982, the Wyoming legislature waived sovereign immunity to permit appellant to bring his action against the state by special act. Ch. 24, S.L. of Wyoming, 1982. Appellant subsequently filed a new complaint on May 6, 1983, against the State of Wyoming and the Wyoming Highway Commission (hereinafter collectively referred to as the state). This action was joined with appellant's suit against Officer Michael Hays, the City of Riverton, and Gilpatrick Construction Company pursuant to court order on October 13, 1983. Gilpatrick Construction Company, the state and the City of Riverton all moved for summary judg-ment. The motions were granted by the trial court on April 2, 1984.

Trial was had against the remaining defendant, Officer Michael Hays, on May 22, 1984. The jury found that Officer Hays had acted negligently, but that such negligence was not the proximate cause of appellant's accident and resultant injuries.

Appellant seeks review of the summary judgment granted in favor of appellees Gilpatrick Construction Company and the state, and raises this single issue:

"Whether or not the trial court erred in granting the motions for summary judgment filed by the appellees."

We will affirm.

The facts show that on the evening of November 20, 1976, appellant and two friends, Greg Conner and John Burton, were "celebrating" in Riverton, Wyoming. The three companions visited several bars in Riverton and continued such activity until about 2:30 a.m. on November 21, 1976. Sometime after 3:00 a.m. on November 21, the three were spotted by Officer Michael Hays proceeding west out of Riverton toward Dubois, Wyoming, in appellant's car, a 1968 Chevrolet Camero. Officer Hays clocked appellant's vehicle at 90 miles per hour. Officer Hays pursued the vehicle west through the bridge construction detour and stopped the vehicle on the west end of the detour.

After Officer Hays stopped the vehicle, a dispute ensued between the officer and the three companions as to how fast the vehicle was actually going and the accuracy of the officer's radar gun. Mr. Conner then suggested that a speed test be conducted to check the accuracy of the radar in Officer Hays' patrol car. Officer Hays agreed to this test even though there was no operating speedometer in appellant's car by which to check the radar. Mr. Conner and Officer Hays sat in the patrol car as appellant and Mr. Burton sped off westbound in appellant's car and reached a speed in excess of 90 miles per hour on the radar. The car then turned around, heading back eastbound in the direction of the patrol car and the bridge construction detour. It is unclear how fast appellant's vehicle was trav-

eling when it passed the patrol car the second time. The radar in the patrol car indicated appellant's speed was at least 100 miles per hour. Mr. Conner recalled the vehicle was going too fast to negotiate the detour. Mr. Dick Mabie, one of appellees' expert witnesses, stated in his affidavit that appellant's "most probable speed * * was 90 m.p.h., giving [appellant] the benefit of any doubt with a minimum of 70 m.p.h." At the summary judgment hearing, appellant's counsel agreed that appellant's speed was somewhere between 60 and 103 miles per hour. In any event, appellant was unable to slow the car down to safely drive through the detour. The car crashed through a pile of railroad ties and traveled 81 feet until it stopped in or near a canal. Mr. Burton died as a result of the injuries he sustained in the accident and appellant suffered serious injury.

■ As stated earlier, appellant's only issue on appeal is whether the trial court erred in granting summary judgment in favor of appellees Gilpatrick Construction Company, Inc. and the state. When reviewing summary judgment on appeal, we examine the judgment in the same light as the district court, using the same information. *Lane Company v. Busch Development, Inc.*, Wyo., 662 P.2d 419 (1983). The party moving for summary judgment has the burden of showing there is no genuine issue of material fact. *Dudley v. East Ridge Development Company*, Wyo., 694 P.2d 113 (1985). A material fact is one which, if proved, would have the effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse*, Wyo., 697 P.2d 1040 (1985). When examining the record on summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving to him all favorable inferences which may be drawn from the facts. *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980).

In support of their motions for summary judgment, appellees filed affidavits of four civil engineers. All the engineers testified that the road signs and detour in the bridge construction area were in substantial compliance with law as required by § 31-5-112, W.S.1977 (November 1984 Replacement), which reads:

"The commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with this act for use upon highways within this state. The uniform system shall correlate with and so far as possible conform to the system set forth in the most recent edition of the 'Manual on Uniform Traffic Control Devices for Streets and Highways' and other standards issued or endorsed by the federal highway administrator." [1]

Typical of the engineers' testimony is the affidavit of George A. Dale, a civil engineer for the State Highway Department. He concluded the signs used at the detour were in substantial accordance with law and not the cause of the accident:

"4. Your affiant is familiar with the construction detour and traffic control devices in use at a bridge reconstruction site West of Riverton, Wyoming—Project Number TQF-030-3 (11).

"5. Your affiant is familiar with the rationale and installation of construction detours.

"6. The detour in place had to be designed to fit field conditions because of existing approaches to homes or semi-rural businesses and groups of trees, making it impossible to obtain a clear area of 500 feet on both ends of the bridge to be replaced.

---

**1.** This statute has been amended since the accident happened. The changes have been minor as evidenced by the wording of the statute in effect at the time of the accident, which read:

"The state highway commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this act for use upon highways within this state. Such a uniform system shall correlate with and so far as possible conform to the system set forth in the most recent edition of the 'Manual on Uniform Traffic Control Devices for Streets and Highways.'" Section 31-5-113, W.S.1977.

"7. The 500 feet, we feel, is irrelevant because of the speed actually being driven by the plaintiff, which far exceeded the legal speed limit.

"8. Since the state standard plan was not totally applicable, the resident engineer and contractor used as a guide, the typical traffic control plan as outlined in the *Manual of Uniform Traffic Control Devices* for a two-lane detour around a bridge to be replaced which matched the field conditions almost exactly. Page 272, figure 6–2 1971 Edition. This Manual has been adopted by the State Highway Commission for use on all public highways within the State as mandated by State Statute (W.S. 36–5–113).

"9. Your affiant states that the only applicable deviation from state or federal standards was in the use of a curve warning sign rather than a turn warning sign with a recommended driving speed of under 30 M.P.H. In my opinion, this minor deviation would have no effect on the accident.

"10. The flashboards or barrels as shown on the state standard are taken care of in the *Manual of Uniform Traffic Control Devices* standard by a large far side arrow which was installed, but was not intended for an east-bound vehicle and therefore, in my opinion, was correctly installed and would have had no effect on the accident."

To the same effect is the affidavit of John W. Karhu, also a civil engineer for the State Highway Department, who testified:

"5. Your affiant inspected the detour Friday November 19, 1976 and detour was found to be in compliance to current 'Manual On Uniform Traffic Control Devices For Streets & Highways' and in accordance to the 1974 Specifications For Road and Bridge Construction. Because of the confined conditions at construction area, affiant adjusted barricade spacing to fit field conditions. Affiant also had additional WC–4 barricades placed on west side of structure because of the sixty-six foot roadway width being barricaded. Portable flashers were installed on barricades at west side of structure.

"6. Affiant states that large arrows were installed in lieu of flashcards or barrels since they meet 'Manual on Uniform Traffic Control Devices For Streets & Highways' standards and were less likely to be removed by vandalism, a common occurrence on urban type projects.

"7. Affiant inspected project site November 22, 1976 with District Traffic Engineer, Jay Gould and Mike McDonald, Safety Supervisor for Gilpatrick Construction Company. At this time additional devices were recommended to be installed that exceeded standard detour signing. This upgrading was done to insure that additional accidents did not occur at this location.

"8. Additional signing included installation of a 45 M.P.H. and 35 M.P.H. advisory speed limit signs on the west end of the detour site; fluorescent barrel with arrows on west side taper to detour; and permanent 12″ flashing warning lights at detour sign locations.

"9. Your affiant, in his opinion, states that the minor deviation in the curve warning sign with a 15 M.P.H. had no effect on the accident that occurred at speeds far exceeding legal limits."

In support of his opposition to the motions for summary judgment, appellant filed the affidavit of Howard L. Anderson, a civil engineer from Alabama. In his affidavit, Mr. Anderson testified that in his opinion there were various defects in the way the signs were placed in the detour, etc. However, by his own admission Mr. Anderson stated he did not have all the relevant information before him:

"3. I have not yet had an opportunity to review: (1) the entire plans and specifications for the project; (2) the final 'as-constructed' plans for the project; (3) the police reports for the accident; (4) the construction contract for the project entered into by the State Highway Commission and Gilpatrick Construction Company; and (5) State standard plans or design criteria adopted by the Wyoming State Highway Commission for projects of this type."

We therefore must conclude, as did the trial court, that summary judgment is proper inasmuch as we find an absence of any genuine issue of material fact. There is no competent evidence upon which to base any conclusion of negligence on the part of the appellees. All of appellees' experts testified that the signs and the detour were in substantial compliance with the "Manual on Uniform Traffic Control Devices for Streets and Highways" as required by § 31–5–112, W.S.1977 (November 1984 Replacement). See, e.g., *Fanning v. City of Laramie*, Wyo., 402 P.2d 460 (1965). We note that the statute only requires compliance with the manual "so far as possible"; strict compliance is not mandated. Appellee Gilpatrick Construction Company, Inc., erected the signs and detour according to the Highway Department's plans.[2] See, e.g., *Phelan v. Read Construction Company*, Wyo., 379 P.2d 829 (1963). In any event, it would be difficult at best to find any minor deviations in the detour signs as being the proximate cause of the accident when appellant knew the lay-out of the detour from having driven through it minutes before the accident, and was traveling at a speed which exceeded all legal limits.

As a general proposition, summary judgments are not favored in actions sounding in negligence. *Dubus v. Dresser Industries*, Wyo., 649 P.2d 198 (1982). But where there is a nonexistence of a genuine issue of material fact, summary judgments have been upheld in numerous actions sounding in tort. *Seamster v. Rumph*, Wyo., 698 P.2d 103 (1985); *Hurst v. State*, Wyo., 698 P.2d 1130 (1985); *McMurry v. Howard Publications, Inc.*, Wyo., 612 P.2d 14 (1980); *Bancroft v. Jagusch*, supra; *Keller v. Anderson*, Wyo., 554 P.2d 1253 (1976); *Bluejacket v. Carney*, Wyo., 550 P.2d 494 (1976); *Apperson v. Kay*, Wyo., 546 P.2d 995 (1976); *Wells v. Jeep Corporation*, Wyo., 532 P.2d 595 (1975); *Maxted v. Pacific Car & Foundry Company*,

Wyo., 527 P.2d 832 (1974); *Clouser v. Spaniol Ford, Inc.*, Wyo., 522 P.2d 1360 (1974); *LeGrande v. Misner*, Wyo., 490 P.2d 1252 (1971); *Parker v. Heasler Plumbing & Heating Company*, Wyo., 388 P.2d 516 (1964); *Lieuallen v. Northern Utilities Company*, Wyo., 368 P.2d 949 (1962). Where there is no genuine issue of material fact, movants are entitled to summary judgment as a matter of law.

"* * * The judgment sought [by a motion for summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *" Rule 56(c), Wyoming Rules of Civil Procedure.

We find that the trial court was correct in granting summary judgment in favor of the appellees in this case.

Affirmed.

---

**2.** There was a very minor deviation in the "15 miles per hour turn sign" originally planned for use by the Highway Department in the construction area. But it is highly unlikely this had anything to do with the cause of the accident

when appellant had personal knowledge of the curve, having driven through it minutes earlier, and yet chose to attempt to negotiate the curve at a speed greatly exceeding the posted 15 miles per hour.