Gerrit (Dutch) MOSTERT, Personal Representative of the Estate of Kumi Maria Mostert, for and on Behalf of Dutch and Kay Mostert, Appellant (Plaintiff),

v.

CBL & ASSOCIATES and American Multi Cinema, Inc., Appellees (Defendants).

No. 86–220.

Supreme Court of Wyoming.

Aug. 14, 1987.

Robert G. Pickering and Henry F. Bailey, Jr. of Bailey, Pickering, Stock & Welch, Cheyenne, for appellant (plaintiff).

Peter K. Michael and Nicholas G. Kalokathis of Lathrop & Uchner, Cheyenne, for appellee (defendant) CBL & Associates.

Weston W. Reeves and M. Greg Carlson of Reeves & Murdock, Casper, for appellee (defendant) American Multi Cinema, Inc.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

Appellant Gerrit (Dutch) Mostert, personal representative of the estate of Kumi Maria Mostert and on behalf of Dutch and Kay Mostert, filed a complaint alleging negligence and/or willful, wanton and reckless conduct on the part of appellees, Frontier Mall complex owners, CBL & Associates (CBL) and American Multi Cinema, Inc. (AMC), after Kumi Maria Mostert tragically drowned when the vehicle in which she was riding was engulfed by flood waters. Before trial the court granted appellee AMC's motion to dismiss with prejudice and also granted appellee CBL a summary judgment. On appeal, appellant urges the following issues:

1. "Whether the court incorrectly converted a motion to dismiss filed by one of the defendants [CBL] into a motion for summary judgment?"

2. "Whether liability should be imposed against a theatre owner [AMC] and the owner of the complex in which the theatre is located [CBL], both of whom had knowledge of flash flood warnings (and a demand by city officials that citizens stay off the streets to avoid injury from severe flash flooding), for negligently failing to restrain or warn their patrons of the foreseeable, dangerous consequences of their leaving the theatre and mall complex and traveling on city streets which proximately caused the death by drowning of a seven year old girl, and severe injury to her parents?"

The status of appellees is substantially different. Therefore, we will address the following issues.

I

Whether liability should be imposed against a theatre owner [AMC] for negligently failing to restrain or warn patrons of the foreseeable, dangerous consequences of their leaving the theatre.

II

Whether the court incorrectly converted a motion to dismiss filed by CBL into a motion for summary judgment.

III

Whether liability should be imposed against the owner of the complex in which the theatre is located [CBL], for negligently failing to restrain or warn patrons of the foreseeable, dangerous consequences of their leaving the mall complex.

We reverse in part, affirm in part and remand to the trial court for disposition in conformity with this opinion.

On the evening of August 1, 1985, Gerrit (Dutch) and Kay Mostert and their daughter, Kumi Maria, were patrons of appellee American's Frontier Six Theatres (AMC) located in the Frontier Mall complex owned by appellee CBL & Associates (CBL), in Cheyenne, Wyoming.

During the evening, Cheyenne experienced a severe thunderstorm which caused the National Weather Service, civil defense authorities, and local law enforcement officials to issue severe thunderstorm, flash flood and tornado warnings. As the storm became progressively worse, local emergency management officials demanded that citizens stay indoors in a safe area and off the streets to avoid being injured or killed.

Appellees were aware of the severity of the August 1, 1985, storm; were aware of the National Weather Service, civil defense, and local law enforcement warnings, as well as the severe flooding occurring in Cheyenne during the movie. However, the Mostert family never became aware of the warnings or severity of the storm because they were inside AMC's theatre, and they and other patrons attending the movie were not warned.

After the movie, the Mosterts left the theatre through an exit leading directly into the parking lot. They traveled eastward on Del Range Boulevard, and at some point on the road the Mosterts' vehicle was struck by flood waters. In an attempted escape, Kumi Maria drowned. Thereafter, a complaint was filed, alleging negligence and/or willful, wanton and reckless conduct on the part of both appellees.

Appellee AMC filed a motion to dismiss on the grounds that no duty existed to warn or act for the protection of its patrons, the Mostert family, alleging that the Mosterts failed to state a claim upon which relief could be granted under Rule 12(b)(6), Wyoming Rules of Civil Procedure. The action against AMC was dismissed on July 17, 1986.

Thereafter, CBL moved to dismiss the complaint. The CBL motion contained affidavits of two Frontier Mall employees, and portions of Mr. and Mrs. Mostert's deposition. Appellant opposed the motion to dismiss, but based on the court's ruling on AMC's motion to dismiss, appellant suggested that an order granting the motion be entered to expedite appeal.[1] An order granting CBL a summary judgment was entered on August 1, 1986. Appellant appeals the orders as to both appellees. A final amended notice of appeal was filed by appellant on August 5, 1986.

I

■ Appellant alleges that the trial court erred when it dismissed the complaint against AMC for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), W.R.C.P.

According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. *Johnson v. Aetna Casualty & Surety Co. of Hartford,* Wyo., 608 P.2d 1299 (1980). In considering such a motion, the "facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs." *Moxley v. Laramie Builders, Inc.,* Wyo., 600 P.2d 733, 734 (1979). Dismissal is a drastic remedy, and is sparingly granted. *Harris v. Grizzle,* Wyo., 599 P.2d 580 (1979). In *Lewis v. State Board of Control,* Wyo., 699 P.2d 822, 824 (1985), we said:

> " * * * In reviewing a dismissal under Rule 12(b)(6) [W.R.C.P.], this court will only sustain such dismissal if the complaint shows on its face that the plaintiff is not entitled to relief. *Johnson v. Aetna Casualty and Surety Co. of Hartford,* Conn., Wyo., 608 P.2d 1299 (1980), *appeal after remand* 630 P.2d 514, *cert. denied* 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981), *reh. denied* 455 U.S. 1039, 102 S.Ct. 1743, 72 L.Ed.2d 157 (1982). Therefore, we treat as true all the allegations of contestants' complaint. *Moxley v. Laramie Builders, Inc.,* Wyo., 600 P.2d 733 (1979)."

Because the trial court dismissed appellant's complaint on the narrow ruling that AMC had no legal duty, we limit our discussion to duty and make only fleeting reference to other ingredients of negligence such as violation of duty, proximate cause and injury.

Historically, landowners owed no duty to warn or take action to prevent harm to

---

1. On July 18, 1986, appellant in a letter to the judge of the trial court stated:

"Although I oppose the Motion to Dismiss filed by Defendant CBL & Associates for the same basic reason set forth in my Opposition to American Multi Cinema's Motion to Dismiss, I recognize, based on the Court's deci- sion relative to American Multi Cinema, that the case against CBL & Associates will probably be dismissed also. So that I might expe- dite the appeal process, I would therefore appreciate your entry of an Order granting CBL's Motion at this time."

invitees where the risks involved were outside their premises. However, the imprecise term "duty" has no simple definition that is applicable in all circumstances. One commentator has said:

"* * * It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. It is a shorthand statement of a conclusion, rather than an aid to analysis in itself. Yet it is embedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But it should be recognized that 'duty' * * * is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

"* * *

"* * * [T]he courts have merely 'reacted to the situation in the way in which the great mass of mankind customarily react,' and that as our ideas of human relations change the law as to duties changes with them. Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." Prosser & Keaton on Torts, § 53, pp. 357–359 (5th ed. 1984).

"* * * The judge's function in a duty determination involves complex considerations of legal and social policies which will directly affect the essential determination of the limits to government protection. Consequently, * * * the imposition and scope of a legal duty is dependent not only on the factor of foreseeability ([*Cunis v. Brennan*] 56 Ill.2d 372, 375, 308 N.E.2d 617) but involves other considerations, including the magnitude of the risk involved in defendant's conduct, the burden of requiring defendant to guard against that risk, and the consequences of placing that burden upon the defendant. [Citations.]" *Nelson by Tatum v. Commonwealth Edison Company*, 124 Ill.App.3d 655, 662, 80 Ill.Dec. 401, 465 N.E.2d 513, 519 (1984).

In *Gates v. Richardson*, Wyo., 719 P.2d 193, 196 (1986), this court quoted Prosser & Keeton, Torts § 54 at 357–358 (1984):

"* * * Duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which leads the law to say that the plaintiff is entitled to protection."

It is stated in *Collins v. Memorial Hospital of Sheridan County*, Wyo., 521 P.2d 1339, 1341 (1974),

"* * * [t]he writer freely concedes the importance, necessity, and strength of the doctrine of stare decisis * * * but is unable to

utilize this doctrine as a justification for the continuance of an unfair and improper rule which operates to the detriment of those who may suffer tortious injury * * *."

And, in *Lewis v. Wolf*, 122 Ariz.App. 567, 596 P.2d 705, 706 (1979), that

"* * * [t]he main characteristic of the common law is its dynamism. It does not remain static. The common law is not a thing of chiseled marble to be left unchanged for centuries."

The court in *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105, 110 (1962), said:

"* * * Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for

him.' Mr. Justice Douglas, 'Stare Decisis' 49 Columbia Law Review 735, 736. * * * "

We do not hesitate to depart from a historic or traditional rule in order to meet changing needs or correct and clarify inappropriate application of a traditional rule. *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408 (1983).

■ Based upon the foregoing and upon balancing a number of factors, we find it appropriate to depart from the traditional rule that a landowner has no duty to warn an invitee of risks off the landowner's premises.

In *Yalowizer v. Husky Oil Company,* Wyo., 629 P.2d 465, 467 (1981), we quoted Restatement (Second) Torts § 331 with approval:

" '(1) An invitee is either a public invitee or a business visitor. * * * (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.' "

AMC was undeniably in the business of showing motion pictures to the public since it advertised such showings and the Mosterts paid admission for such an opportunity. Therefore, the Mosterts are classified as business visitor-invitees.

In determining AMC's duty to appellants, as business visitor-invitees, we note the case of *Gates v. Richardson,* supra, quoting *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166 (1976), stating that a court must balance numerous factors when determining the existence of duty in each particular case. Those factors are as follows:

" * * * (1) [t]he foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the conse-

quences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved. *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334, 342, 83 A.L.R.3d 1166 (1976)." *Gates v. Richardson,* supra, at p. 196.

For the purposes of determining the propriety of dismissal of appellant's action, we assume the facts alleged in the complaint to be true. We now relate these circumstances to the eight factors set out in *Gates v. Richardson,* supra.

1. The foreseeability factor—AMC was aware of a severe thunderstorm and the presence of tornadoes and flash flooding outside the mall and in the vicinity. It was also aware that the storm became progressively worse and that city officials had demanded that citizens stay off the streets to avoid injury.

2. The closeness factor—the injury suffered by appellants was not remote. Kumi Marie Mostert drowned only minutes after AMC's dereliction in not informing theatre patrons.

3. The degree of certainty factor (that plaintiff had suffered injury)—the injury suffered by the Mostert family was the greatest possible injury—the death of Kumi Marie.

4. The moral blame factor—the Mostert family was a business invitee of AMC and unaware of the storm. AMC was aware of the storm, flooding and attendant dangers. AMC was aware that city officials had demanded that citizens stay off the streets to avoid injury. Despite this superior knowledge, AMC did nothing to warn its patrons.

5. The policy of preventing future harm factor—a rule that business managers have a duty to pass on knowledge to invitees regarding off-premises dangers may reduce injury in the future. If businesses understand they have this duty, they would likely tell patrons what they know about off-premises risks.

6. The burden on defendant factor—the burden of passing AMC's superior knowledge on to patrons regarding the flood

appears to be minimal. Theatres find a simple way to pass on to patrons all kinds of information. While we cannot assess the financial costs to AMC, we do not foresee them to be overly excessive. Moreover, the chance of a natural disaster is rare.

7. The consequences to community and courts factor—the consequences of a "duty rule" on the community and court system is a neutral factor.

8. The insurance factor—we do not know the cost of insurance or its availability for the risk involved here. Even if insurance were not available, that single factor should not be dispositive of this case.

Although we have not found a case directly on point, there are some cases that address off-premises risks.

In *Garrett v. Grant School District No. 124*, 139 Ill.App.3d 569, 93 Ill.Dec. 874, 487 N.E.2d 699 (1985), the court said that " * * * a particular standard of care is imposed on those involved in the four 'special relationships' which are described in section 314A of the Restatement. (Restatement (Second) of Torts § 314A (1965). The four special relationships which give rise to a duty to protect another from harm are: (1) carrier-passenger, (2) innkeeper-guest, *(3) business invitor-invitee,* and (4) voluntary custodian protectee under certain limited circumstances." [2] (Emphasis added.)

The case of *Tarasoff v. University of California,* supra, cited with approval by this court in *Gates v. Richardson,* supra, was concerned with failure to warn of an off-premises risk. There, a therapist was told by his patient, during a treatment session on the premises of Cowell Memorial Hospital, that he intended to kill Tatiana Tarasoff. Although the therapist and the supervisors predicted the patient presented a serious danger of violence to Tatiana, no warnings were delivered. Ultimately, the patient went to the young woman's residence and killed her.

The Supreme Court of California held that although there was no special relationship between Tatiana and the therapist, there was a relationship between the patient and the defendant therapist. Based on that relationship, the court held that the therapist owed a duty to warn the endangered party (Tatiana) or those who could have been reasonably expected to notify her of the danger.

In *Piedalue v. Clinton Elementary School District No. 32,* Mont., 692 P.2d 20, 22–23 (1984), the court said:

" * * * [T]he true ground of liability of a business proprietor to an invitee for injuries sustained on the premises is the superior knowledge of the business proprietor over that of the business invitee of the dangerous condition and the proprietor's failure to give warning of the risk.

" * * *

"In the application of that rule, it has been held that the duty of an occupier of premises beyond the premises to the entrances into and exits from such premises and it is his duty to warn his customers of hidden hazards upon, around or beyond his premises, if he would reasonably expect use of an adjacent area by his customer in connection with the invitation. To incur liability to a business invitee, it is not necessary that the owner or occupier own or control ingress or egress exits or that the owner or occupier create the hazard, if the hazard created a foreseeable risk of harm to business invitees and the owner or occupier knew of its presence and should have taken reasonable precautions to eliminate

---

2. Restatement (Second) Torts § 314A (1965). Special Relations Giving Rise to Duty to Aid or Protect.

"(1) A common carrier is under a duty to its passengers to take reasonable action

"(a) to protect them against unreasonable risk of physical harm, and

" * * *

"(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

it by such measures as posting warnings
* * * ."[3]

A Kansas case says:

"* * * The possessor of premises on which an invitee enters owes a higher degree of care, that of reasonable or ordinary care for the invitee's safety. This duty is active and positive. It includes a duty to protect and warn an invitee against any danger that may be reasonably anticipated. [Citations.]" *Gerchberg v. Loney*, 223 Kan. 446, 449, 576 P.2d 593, 596 (1978).

Allegations taken from appellant's complaint establish that AMC, through its duly appointed officers and employees, was aware that flooding was occurring outside the mall and that the storm had become progressively worse, reaching a point where city officials demanded that citizens stay off the streets to avoid injury or death by severe flash flooding. This occurred during the 7:45 p.m. movie on August 1, 1985.

Balancing the factors set out in *Gates v. Richardson*, supra, we do not detect a public policy against imposing a duty on AMC to advise patrons of off-premises dangers. The risks to which the Mostert family were exposed far outweighed the minimal burden placed on AMC to reveal its knowledge to its patrons.

We conclude that appellee AMC owed the Mostert family an affirmative duty to exercise reasonable or ordinary care for their safety which includes an obligation to advise them of off-premises danger that might reasonably be foreseeable. We are not suggesting by our determination that AMC had a duty to restrain its patrons or even a duty to advise them what to do. The duty as we see it is only to reveal what AMC knew to its customers.[4]

## II

█ Appellant claims that he did not receive adequate notice of conversion of CBL's motion to dismiss into a motion for summary judgment; that he was unfairly or inappropriately surprised, and that if he had known of such conversion no request to expedite the appeal would have been made. According to appellant, the court had the discretion to consider the motion only under standards set out in Rule 12(b)(6), W.R.C.P., and abused its discretion when it converted CBL's motion to dismiss into a motion for summary judgment. We do not agree.

Rule 12(b), W.R.C.P., states in applicable part:

"* * * [T]he following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *. No defense or objection is waived by being joined with one * * * (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*" (Emphasis added).

Although CBL's motion was denominated as a "Motion to Dismiss," it was supported by affidavits and depositions filed concurrently with the motion. The motion also stated "and additionally there is no genuine question of material fact as to this defendant." Therefore, it is undisputable that matters outside the pleadings were not only contemplated, but were in fact presented to the trial court for considera-

---

**3.** See also, *Byron v. Fresh Pond Open Air Theatre*, 333 Mass. 121, 128 N.E.2d 785 (1955); *Greenfield v. Freedman*, 328 Mass. 272, 103 N.E. 242 (1952); *Shaw v. Boston American League Baseball Co.*, 325 Mass. 419, 90 N.E.2d 840 (1950); *McIntosh v. Linder-Kind Lumber Co.*, Mont., 393 P.2d 782 (1964); *Rockefeller v. Standard Oil Company of California*, 11 Wash.App. 520, 523 P.2d 1207 (1974).

**4.** Determination of what knowledge AMC actually possessed concerning the inclement weather and resulting dangers in conjunction with any failure of duty on the part of AMC, remain matters in issue to be proven at trial.

tion. As stated in *Torrey v. Twiford,* Wyo., 713 P.2d 1160, 1162–1163 (1986):

"If a trial judge actually considers matters other than the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), his decision is converted to a summary judgment. See discussion in *Newberg v. American Dryer Corporation,* 195 F.Supp. 345 (E.D.Pa.1961). The conversion may be automatic, as when the judge considers affidavits in connection with a Rule 12(b)(6) motion, *Greaser v. Williams,* Wyo., 703 P.2d 327 (1985); *International Longshoremen's and Warehousemen's Union v. Kuntz,* 334 F.2d 165 (9th Cir.1964), or the conversion may be accomplished by motion of one of the parties. * * * "

We hold that the conversion from Rule 12(b)(6) to summary judgment was proper. Documents which could have been filed pursuant to a motion for summary judgment, but were filed with the motion to dismiss, indicated that the moving party expected to have the motion decided pursuant to Rule 56, W.R.C.P. Therefore, there was no error in converting the motion to dismiss into a motion for summary judgment.

Furthermore, it has been stated:

" * * * When a party files an affidavit which a judge considers under a Rule 12(b)(6) motion, this court will treat the motion as a motion for summary judgment subject to the time requirements of Rule 56, *whether or not the record demonstrates that the parties had other notice of the conversion, unless the record otherwise demonstrates unfair or inappropriate surprise to either party but normally for the nonmoving party.* * * * " (Emphasis added.) *Torrey v. Twiford,* supra, at 1134.

In this case appellant was afforded proper notice and therefore not unfairly or inappropriately surprised by the trial court's action. He received the ten day notice requirement in which to respond to appellee CBL's motion. Rule 56, W.R.C.P.; and Rule 302, Uniform Rules for the District Courts of the State of Wyoming.

While the order did not specifically say that an automatic conversion had occurred, the order was sufficient to apprise appellant of the impending circumstances. In spite of the fact that no notice is necessary in instances of automatic conversion from Rule 12(b)(6) to summary judgment, the trial court specifically ordered that appellant have ten days in which to respond. The court did not actually enter the dismissal order until seven days later. This is "reasonable" notice, and appellant had the opportunity to present all material pertinent to his defense of the motion.

### III

Having determined that summary judgment was the proper vehicle for consideration of the case against CBL, we note that our oft-cited standard of review on appeal from summary judgment is governed by the fundamental rule that summary judgment properly issues only upon the dual finding that no genuine question of material fact exists and that the prevailing party is entitled to judgment as a matter of law. *Rompf v. John Q. Hammons Hotels, Inc.,* Wyo., 685 P.2d 25 (1984); and *Matter of Estate of Brosius,* Wyo., 683 P.2d 663 (1984). According to Rule 56(c), W.R.C.P., a summary judgment

" * * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law. * * * "

The purpose of summary judgment is to eliminate formal trials where only questions of law are involved, *Johnson v. Soulis,* Wyo., 542 P.2d 867 (1975), and to pierce the formal allegations and reach the merits of a controversy where no material issue of fact is present. *Siebert v. Fowler,* Wyo., 637 P.2d 255 (1981). When a question arises as to whether or not genuine issue of material fact exists, as in this case, we follow our oft quoted standard:

"When reviewing a summary judgment on appeal, we review the judgment in the

same light as the district court, using the same information. *Randolph v. Gilpatrick Construction Company, Inc.,* Wyo., 702 P.2d 142 (1985); and *Lane Company v. Busch Development, Inc.,* Wyo., 662 P.2d 419 (1983). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. *Dudley v. East Ridge Development Company,* Wyo., 694 P.2d 113 (1985). Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse,* Wyo., 697 P.2d 1040 (1985). Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts. *Bancroft v. Jagusch,* Wyo., 611 P.2d 819 (1980)." *England v. Simmons,* Wyo., 728 P.2d 1137, 1141 (1986).

Furthermore, in *Stundon v. Sterling,* Wyo., 736 P.2d 317, 318 (1987), we noted that

" * * * [t]he initial burden is on the movant to show that there is no genuine issue of material fact. *Fiedler v. Steger,* Wyo., 713 P.2d 773 (1986). Once that showing is made, it is incumbent upon the party opposing the motion to come forward with specific facts to show that there is a genuine issue of material fact. [Citations.] Conclusory affidavits are insufficient and specific facts must be shown. *Blackmore v. Davis Oil Company,* Wyo., 671 P.2d 334 (1983)."

In this case CBL showed from affidavits and depositions submitted to the court in connection with its motion, that its status was significantly different than that of AMC. CBL was not the possessor of the theatre patronized by the Mosterts; and further, the Mosterts were on the premises exclusively controlled by AMC. CBL had no right or duty as landlord to enter the theatre and warn AMC's patrons about weather conditions. Yet, an employee of CBL reported the thunderstorms to each tenant, including AMC. Additionally, the Mosterts left the theatre through a doorway controlled by AMC directly into the parking lot. These materials are sufficient to meet the movant's burden and to make a prima facie showing that there is no genuine issue of material fact.

Appellant did not supply any evidence to oppose the motion of appellee CBL, and therefore did not meet his burden in showing that there was a genuine issue of material fact. We find that no genuine questions of material fact existed, and will now determine whether appellee CBL should be entitled to judgment as a matter of law.

■ The duty of care owed by an owner to an entrant upon his land is dependent upon the status of the person entering the premises. See *Yalowizer v. Husky Oil Co.,* supra; and *Maher v. City of Casper,* Wyo., 219 P.2d 125 (1950). Again, according to Restatement (Second) Torts § 314A (1965), four "special relationships" give rise to a duty to protect another from harm: (1) carrier-passenger; (2) innkeeper-guest; (3) voluntary custodian protectee under certain limited circumstances; and (4) business invitor-invitee, as is the case here.

The general rule is that the owner or occupier of real property owes a duty to business visitor-invitees to maintain the premises in a reasonably safe condition. *Loney v. Laramie Auto Co.,* Wyo., 255 P. 350 (1927). As stated in *Dudley v. Montgomery Ward & Co.,* Wyo., 192 P.2d 617, 622 (1948), quoting from *J.C. Penney Co. v. Robison,* 128 Ohio St. 626, 193 N.E. 401, 403, 100 A.L.R. 705 (1934):

" 'The rule is succinctly stated in Cooley on Torts, Vol. 2, p. 1259 (3d Ed.) viz.: " * * * When he [the owner or lessor] expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." ' "

However, when real property is leased to a tenant, the duty to maintain shifts to the lessee.[5] In these instances, the lessor is under a somewhat lesser duty, a duty to act as a reasonable person in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties to avoid risk. *Hall v. Quivira Square Development Co., Inc.*, 9 Kan.App.2d 243, 675 P.2d 931 (1984). Generally, liability is suspended as soon as a landlord surrenders possession and control of the premises in good condition to the lessee. 49 Am.Jur.2d Landlord and Tenant § 908, p. 888 (1970).

Given the circumstances in this case, we find no breach of duty by CBL to inform or warn the Mostert family of the off-premises dangers. Appellee CBL's conduct fell well within the community standards of reasonable conduct. Assuming that injury because of the storm and flood was foreseeable, we do not find that appellee CBL possessed necessary control of the premises or had an opportunity to warn the Mosterts. Here appellee AMC, as a tenant of CBL had exclusive possession of the property and retained complete control of the theatres. Finally, because of practical considerations, we find that if this court were to impose liability on a landlord for injuries sustained off the landlord's property, as in this case, it would be difficult to place any practical limitation upon such liability. Extending liability under the circumstances here upon a landlord stretches the legal theory of duty too far. A landlord cannot be expected to be an absolute insurer of the safety of each and every person who enters upon property which is exclusively in the possession and control of his tenant.

We are satisfied the trial court did not err in granting summary judgment to appellee CBL. " '[T]he determination that a duty of care exists is an essential precondition to liability founded on negligence. (*Hooks v. Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435,

443, 165 Cal.Rptr. 741.) * * *' " *Vandermost v. Alpha Beta Company*, 164 Cal. App.3d 771, 210 Cal.Rptr. 613, 615 (Cal. App. 2 Dist.1985). As to CBL, we find no breach of duty.

In conclusion, we do not believe that our determination with respect to appellees AMC and CBL is inconsistent. We hold that AMC has a duty because of its special relationship to the Mostert family as business invitees, and the superior knowledge it possessed of the off-premises risks. These findings are coupled with the minimal inconvenience on the part of AMC to share any superior knowledge it might have had with the Mosterts.

Conversely, CBL did not have a special relationship with the Mosterts, nor did it have an opportunity to warn the Mosterts of the flood without improperly intruding into the AMC theater, which was exclusively in the possession of AMC. Any duty that CBL may have had was satisfied when it advised its tenants of the thunderstorm and flooding.

Accordingly, we reverse and remand to the trial court as to appellee AMC and affirm as to appellee CBL.

THOMAS, J., filed an opinion, concurring in part and dissenting in part.

CARDINE, J., filed an opinion, concurring in part and dissenting in part, in which THOMAS, J., joins.

URBIGKIT, J., filed a specially concurring opinion.

THOMAS, Justice, concurring and dissenting.

I agree with the majority in affirming the summary judgment granted in favor of CBL & Associates. I cannot agree with the disposition of the claim against American Multi Cinema, Inc., and I would affirm the trial court in its ruling on the motion to dismiss. There is no duty owed to business invitees such as that espoused by the majority.

---

5. An exception to this duty applies to common areas used generally by both the lessor's tenants and its customers in which the lessor retains control.

The rule articulated in the majority opinion may have a salutary effect upon the vernacular in the State of Wyoming. People sometimes complain of what now has become a common phrase of parting "Have a nice day." From now on, owners of businesses in Wyoming will be instructing their employees to say to each customer who leaves the premises "Now, let's be careful out there." (I acknowledge the paraphrase from a popular television serial of recent years.)

It is disappointing that the majority is not present to the antithesis found in the Court's opinion. The Court says with respect to CBL & Associates " * * * [W]e find that if this court were to impose liability on a landlord for injuries sustained off of the landlord's property, as in this case, it would be difficult to place any practical limitation upon such liability. Extending liability under the circumstances here upon a landlord stretches the legal theory of duty too far." Yet the Court espouses a rule that imposes upon American Multi Cinema, Inc. a duty to warn its patrons of dangerous conditions off its premises.

Even the analysis of the leading case relied upon by the majority opinion is unacceptable. In discussing *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166 (1976), the majority says that it "was concerned with failure to warn of an off-premises risk." My reading of that case demonstrates that it had nothing to do with premises liability or business invitees. It simply involved the application of a special duty with respect to the knowledge acquired by a therapist of the dangerous propensities of the patient. The circumstances of that case are as far removed from this case as Wamsutter is from New York City.

In addressing the duty owed to business visitor-invitees, the majority accurately quotes, from *Dudley v. Montgomery Ward & Company*, Wyo., 192 P.2d 617, 622 (1948), the concept that when one invites others to come upon his business premises, he has a duty to be reasonably sure that he is not inviting them into danger. The majority opinion then as to American Multi Cinema, Inc. espouses a rule that, with respect to business invitees, the proprietor of a business must warn them of danger which is remote from the place of business and over which the proprietor has no control. This quantum leap very much resembles the effort of Evil Knieval to jump the Snake River Gorge on his motorcycle. His effort failed, but he was saved by his parachute. As I suggest below, perhaps our astute trial judges will provide the parachute for our court in instances such as this.

In *Galicich v. Oregon Short Line Railroad Company*, 54 Wyo. 123, 87 P.2d 27 (1939), this court cited with approval Restatement of the Law Torts § 314 (1934). That legal concept now is found in Restatement (Second) Torts § 314 (1965) hereinafter cited as Restatement 2d:

"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

In Restatement 2d § 314, Comment *d*, it is said:

"The rule stated in this Section applies only where the peril in which the actor knows that the other is placed is not due to any active force which is under the actor's control. If a force is within the actor's control, his failure to control it is treated as though he were actively directing it and not as a breach of duty to take affirmative steps to prevent its continuance (see § 302, Comments *a* and *c*)."

I perceive that this is the rule which is precisely applicable to these circumstances, and consequently, the reliance upon the authorities dealing with business premises or the owner or occupier of land is of no efficacy in resolving this problem.

The court should recognize that it is adopting this philosophy found in the latter part of the following language from Restatement 2d § 314, Comment *c*:

"The result of the rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire

peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown. Such decisions have been condemned by legal writers as revolting to any moral sense, but thus far they remain the law. It appears inevitable that, sooner or later, such extreme cases of morally outrageous and indefensible conduct will arise that there will be further inroads upon the older rule."

If this court is committed to structuring a duty because of moral outrage, the court should say exactly that. Perhaps it is not said because moral outrage is not a particularly sound premise upon which to adjust relationships between people. One of the manifestations of the genius of our legal system is its essential pragmatism. As this case demonstrates, rules which are developed out of moral outrage may not be essentially pragmatic.

The usual basis for the imposition of a duty is that performance of that duty will avoid harm to others. It makes little sense to structure a duty which cannot be a legal cause of harm to another. In *Buckley v. Bell*, Wyo., 703 P.2d 1089 (1985), the historical concept of intervening cause and the concept as articulated in Restatement 2d is discussed in detail. The facts, as articulated in the plaintiff's complaint, in this instance demonstrate that the doctrine of intervening cause should foreclose any recovery by the appellant. The trial court, in all likelihood, will have to direct a verdict for American Multi Cinema, Inc. An application of § 442, Restatement 2d, demonstrates clearly that the natural forces coupled with the conduct of traveling in such conditions result in superseding cause as a matter of law. The intervention of those forces did bring about harm different in kind than what otherwise might have resulted; clearly the operation of those forces and the consequences thereof appear after the event to be extraordinary rather than normal; the intervening forces did operate independently of any situation created by some act of negligence on the part of American Multi Cinema, Inc.; in part, they were attributable to a third person's act or failure to act and would be wrongful, subjecting the third person to liability; and a comparison of degree of culpability reaches the same result. When the true cause of this unfortunate loss is considered in the context of *Cox v. Vernieuw*, Wyo., 604 P.2d 1353 (1980), there is additional reason to conclude that no negligence was committed by American Multi Cinema, Inc.

I am so suspect of the wisdom of inducing this appellant to believe that there may be a prospect for recovery because of the failure to warn which the majority structures as a duty in this case, that perhaps I have become hypercritical. I do not perceive any possibility of recovery, and structuring a duty simply to permit the case to go forward is extremely unfortunate. The only prospect of assistance to the appellant in this combination of circumstances is that in some way the defendant will be intimidated into settlement or may conclude that the costs of defending exceed the value for which the case may be settled. I do not think that represents progress in jurisprudence in the State of Wyoming. Consequently, even though moral outrage may be present, I would not depart from the well-established rule that the proprietor of a business owes to his invitees only the duty of protecting them from dangerous conditions on the premises. I cannot agree that there is a duty to warn about dangerous conditions which exist at places remote from and off the premises, particularly when those dangerous conditions arise out of natural forces.

The legislature may wish to correct this judicial legislation by adopting a measure similar to the statute which limits liability for voluntary assistance in certain instances. Section 1–1–120, W.S.1977 (Cum.Supp. 1987).

CARDINE, Justice, concurring and dissenting, with whom THOMAS, Justice, joins.

On August 1, 1985, seven-year-old Kumi Mostert drowned when the vehicle in which she was a passenger stalled and was swept into the main flood channel of Dry Creek in Cheyenne, Wyoming. The trial court

granted appellee American Multi Cinema, Inc.'s (AMC) motion to dismiss with prejudice and granted appellee Frontier Mall complex owners', CBL & Associates (CBL), motion for summary judgment. Appellant Gerrit Mostert appeals.

The district court, in its decision letter dismissing this case, stated:

"Plaintiffs have been unable * * * to cite any authority for the proposition that an owner or occupier of land has a legal duty to business invitees to warn them, prior to their leaving the premises, of dangers that may exist at some point remote from the premises between it and the patrons' destination even if such dangers are known to the owner/occupier and unknown to the business invitee."

I concur in the decision of the court affirming summary judgment as to CBL but dissent with respect to reversal of the dismissal of AMC.

## FACTS

On the evening of August 1, 1985, the Mosterts and their seven-year-old daughter, Kumi, were patrons of American Frontier Six Theatres in the Frontier Mall complex in Cheyenne. While the Mosterts were viewing the 7:45 p.m. showing of "European Vacation," radio announcements made by the national weather service warned of a severe thunderstorm and flash flooding. Civil defense and law enforcement officials requested that all citizens remain indoors. Cheryl Farris, a CBL employee, did not know of the flooding of Dry Creek. However, she had heard of adverse weather conditions and communicated that information to AMC and other mall tenants. The theatre owners did not advise their patrons of the weather warnings. When the movie ended at approximately 9:45 p.m., the Mosterts exited into the parking lot and began to drive home. If it was a dark night, the mall area was well lighted; and if this was to be a 100 year flood, no one knew it at that time. Perhaps only those driving around in the deep water could have predicted the storm might cause a 100 year flood. Mrs. Mostert, in her deposition, stated:

"Q. When you moved onto Del Range, you weren't concerned that the six inches of water on the surface was dangerous. Is that your testimony?

"A. Yes.

"Q. Okay.

"A. Besides, there was one hundred other cars there.

* * * * * *

"Q. Now, you kept driving and the water got deeper?

"A. Right."

Their Ford Ranger pickup continued on about two miles from the mall when it stalled as Mr. Mostert drove into the Dry Creek floodwaters. As the truck was carried downstream, Mr. Mostert attempted to carry Kumi to safety, but was unable to do so and she drowned. Appellant alleges that appellee AMC knew of the severity of the storm, but negligently failed to warn its patrons and failed to prevent the patrons from leaving the theatre.

The majority, in its opinion, candidly admits that:

"Historically, landowners owed no duty to warn or take action to prevent harm to invitees where the risks involved were outside their premises."

This court, apparently adopting a philosophy that holds that for every misfortune that befalls man there must be a third party who should pay, undertakes to overrule all of the common law and to legislate what it thinks best for society. That neat bit of legislating is accomplished by simply stating that where no duty has ever existed before, "we find it appropriate to depart from the traditional rule that a landowner has no duty to warn an invitee of risks off the landowner's premises."

The court suggests support from cases cited as precedent that are not precedent at all, ignoring established law to find a duty where none exists. We have clearly stated the law of landowner liability for condition of premises to be that a business owner

"owes a duty to those whom he has expressly or impliedly invited to come on his premises to be reasonably sure that he is not inviting them into danger, and

he must exercise ordinary care and prudence to render his premises reasonably safe to visit. * * * The store owner must use ordinary care to keep the premises in a safe condition, and he is charged with an affirmative duty to protect visitors against dangers known to him and against dangers which he might discover by use of reasonable care." *Buttrey Food Stores Division v. Coulson*, Wyo., 620 P.2d 549, 552, 20 A.L.R.4th 419 (1980).

The store owner's duty to an invitee does not extend to dangerous conditions outside his premises. *Johnson v. Hawkins*, Wyo., 622 P.2d 941 (1981).

The unanimous rule is typified by *Stedman v. Spiros*, 23 Ill.App.2d 69, 161 N.E.2d 590 (1959), a case in which a guest at a lodge left the lodge property and walked onto a state park where there was a cliff offering a spectacular view of the surrounding countryside. The guest fell off the precipice, dropping more than fifty feet, and sued the lodge for failing to warn of the danger. *Id.* 161 N.E.2d at 593. After pointing out that an innkeeper has the same duty to his guests as any other businessman to his invitees, and also noting that the lodge owner had no control over the state park, the Illinois court granted judgment to the lodge owner as a matter of law, stating:

"The issue presented here is how far beyond the premises over which the defendant had possession and control does defendant's duty of due care extend to provide a reasonably safe means of ingress and egress for plaintiff. Clearly, if the brink of the precipice were a step or two from the defendant's door, or from the stone patio to which defendant's door opened, we would have a different case than is now presented to us. * * *

"Defendant could not, of course, be expected to warn against the innumerable hidden dangers in a seven hundred acre park, nor could he be expected to light those same potentially dangerous places during the darkness or when visibility is restricted." *Id.* at 597–598. See also *Brunsfeld v. Mineola Hotel and Restaurant, Inc.*, 119 Ill.App.3d 337, 74 Ill.Dec. 859, 456 N.E.2d 361 (1983) and cases cited therein.

A few courts have held that the duty of a possessor of business premises may extend to an area off the premises which is used by the possessor's invitees for immediate ingress and egress to the premises. E.g., *Banks v. Hyatt Corp.*, 722 F.2d 214, reh. denied 731 F.2d 888 (5th Cir.1984) (entrance way to hotel four feet from door); *Ollar v. Spakes*, 269 Ark. 488, 601 S.W.2d 868 (1980) (dangerous property must be adjacent); *Piedalue v. Clinton Elementary School Dist. No. 32*, Mont., 692 P.2d 20 (1984) (ditch next to driveway); Annot., 39 A.L.R.3d 579 (1971). But not a single jurisdiction has required a business possessor to warn his invitees of known dangers beyond the area of immediate ingress or egress. *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909 (7th Cir.1985); *Stedman v. Spiros*, supra, 161 N.E.2d at 596; *Brunsfeld v. Mineola Hotel and Restaurant, Inc.*, supra, 456 N.E.2d at 366. See also Prosser & Keeton on Torts § 61 at 424 (1985), and Restatement (Second) Torts § 314A comment c and § 332 comment 1 (1965).

The court has not cited a single case in which a possessor of land has been held liable for failing to warn his invitees of dangerous conditions on land not under the possessor's control. Instead, the cases cited in the majority opinion involve the conduct of dangerous persons, who, after leaving the premises, cause harm to others. These persons represent the instrument of danger and the cause of the harm. *Division of Corrections, Dept. of Health & Social Services v. Neakok*, Alaska, 721 P.2d 1121 (1986) (parolee); *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166, (1976); *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230 (1983) (mental patient); *McClellan v. Tottenhoff*, Wyo., 666 P.2d 408 (1983) (minor liquor purchaser). Here, the instrument of danger was a condition of premises two miles from the theatre. The cases have nothing to do with premises liability.

The court, thus, relying upon cases having nothing to do with premises liability, seeks to buttress the opinion by incorrectly considering as support, again from a case having nothing to do with premises liability, key policy factors listed as:

"(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved." *Gates v. Richardson*, Wyo., 719 P.2d 193, 196 (1986).

Although I seriously question the propriety of considering these policy factors in finding a duty in this case, a review of those factors proves interesting and suggests a result different from that reached by the majority.

1. Foreseeability of harm to the plaintiff. The theatre was not warned of flooding. Would it have foreseen that a patron would drive onto Del Range Boulevard, running six inches of water and crowded with hundreds of cars, and drive two miles down the road into deepening water and finally into a flooded creek bed and this accident result? I think not.

2. The closeness of the connection between the defendants' conduct and the injury suffered. I would conclude that the place of this accident being more than two miles from the theatre, the defendants' conduct was remote from the injury suffered.

3. The degree of certainty that plaintiffs suffered injury is not questioned.

4. The moral blame attached to defendants' conduct. It cannot be claimed that the theatre owners deliberately withheld information to cause harm to plaintiffs. Severe weather warnings, thunderstorms, hail, tornadoes, blizzards and ice are commonplace in Wyoming. It is doubtful that a warning would have made any difference, especially in light of the fact that hundreds of cars were travelling on Del Range Boulevard and all over Cheyenne.

5. The fifth consideration is a policy of preventing future harm. In light of what has been said in paragraph four, it is doubtful that this policy would be affected.

6. The extent of the burden upon the defendants. The extension of liability by the decision of this court is mind boggling. In the future, it will apply to every business in the mall, every business in Cheyenne, every person having any business relationship with another. It will subject persons to potential liability for injuries from accidents that occur two miles, ten miles, perhaps hundreds of miles from the business because of blizzard conditions, road closures, icing, heavy rains, tornadoes, even perhaps construction work of which the business may be aware. The business proprietor will have no control over the premises where the accident occurs, no ability or right to remedy any defect, and no control over the actions or risks undertaken by his customer.

7. The consequences to the community and the court system. It has long been a practice to join as a party defendant every person with any potential liability for injuries suffered in an accident. Thus, in an auto accident, it has been common for suit to be filed against not only the drivers of the cars involved but the city for posting of warning or traffic signs, the state of Wyoming for construction of its highways, the manufacturer of the car for defective design, and manufacturers of component parts of the cars. Now I expect we will see mall owners and businesses also joined as parties for failure to warn in all accidents in which weather is in any way involved.

8. The availability, cost, and prevalence of insurance for the risk involved. It is doubtful whether insurance exists for this kind of liability, but if it does exist, it will be exceedingly expensive. When the theatre must pay expensive insurance premiums to cover these claims, the money must come from somewhere. The only place it can come from is theatre tickets. We have

seen the cost of ski lift tickets ascend from $12.00 to $35.00 in just a few seasons. It is not unreasonable to believe that the cost of theatre tickets might double or triple if theatre owners might be held liable for accidents that result from rain storms or blizzard conditions ten, twenty, or thirty miles away from the theatre after the patrons have left to return home.

Balancing all of the above factors, it seems that the journey upon which this court now embarks in expanding liability is not justified by the review of factors to determine effect and not in the best interest of society.

The real issue in this case is whether the Wyoming Supreme Court should overrule its own precedent and the common law and create a duty unknown in any other American jurisdiction. The trial court thought we should not. I agree.

I would affirm.

URBIGKIT, Justice, specially concurring.

The night was dark, the rains came; some say a one-in-a-hundred-years flood it was to have been. Within the theater, exposed only to make believe of the silver flicks, the audience was unwarned of the anger of nature outside displayed.

Who knew? Shopping center management knew, and told shop owners. Theater management knew, but perforce told not one among its paying patrons who otherwise were not to be forewarned. Then as the film expired in make believe, by the side door with reality they were extruded as an audience endangered by ignorance contributed to by missing information designedly withheld.

I specially concur, to recognize this case as what it is: a dismissal on the pleading presented here for appellate review, as to be clearly definable in well-established rules of duty and negligence, and not adequately discernible in moralistic characterization, whether to be applied pro or con. The subject should be tailored in common sense and duty—whether a theater owner should tell his patrons that a one-in-a-hundred-years flood had occurred outside before they exited into a dark parking lot for travel upon roadways, unknowing of their serious risk for the homebound journey.

One would think that with warning afforded, opportunity to at least listen to the car radio, or telephone to their homes, the life that was lost in a flooded road nearby might have been saved. I see this as a subject for jury review. The issue was not off-premises liability for the theater. I perceive a duty of host to business invitee to communicate his knowledge of facts unknown to the patron of unusual and unexpected exit-time danger. The home of knowledge and needed communication was in the theater, and it was there that the tort occurred, if it did. It simply does not matter whether the clear and obvious danger inculcated in this duty to advise arises from a gunfight adjacent to the north door, a tornado about to arrive, or, as here, flooded conditions on shopping center access roadways.

Whether the plaintiff would have proceeded differently if he had been told what the shopping center and theater management knew is not here disclosed. The child later to drown in the flooded road was denied avoidance opportunity which would have existed if available information had not been withheld.

Assumptive in the character of the present case disposition which does not afford the same breadth and significance of information later to be disclosed at trial, I believe a jury should consider whether the zone of duty responsibilities of a host to a business invitee, under whatever the particular circumstances may have been as existent here, when life-protecting information was not otherwise available to the invitee, could be denied without legal responsibility. The issue may be incompletely characterized as a duty to warn, rather than, as I perceive it, a societal duty as a reasonable care obligation of notification to your guest if you know and he does not what may constitute a recognizable departure danger. This is the "tell them what you know" care standard.

"A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser and Keeton, Law of Torts at 356 (1984).

I do not enjoy the sophistication of differentiating a gunfight or the flood on-premises or off-premises as creating the duty to furnish information to guests when they will, upon departure, be exposed to the danger known only to the host.

A special relationship sufficient to give rise to the duty to act was clearly present *in that theater at that time as the result of that flood.* Restatement (Second) of Torts § 315; *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976); and compare generally Cabrera, *Negligence Liability of Landowners and Occupiers for the Criminal Conduct of Another: On a Clear Day in California One Can Foresee Forever,* 23 Cal.W.L.Rev. 165 (1987), considering the somewhat different subject of criminality injury in premise liability.

I agree with this court by concurrence in the opinion, that a jury should make the negligence and duty violation assessment rather than decision by erratically employed rules of law unjustified in differentiation to the real world of danger exposure and needed protection. *Tader v. Tader,* Wyo., 737 P.2d 1065 (1987). Consequently, I concur in reversal of the judgment as granted to American Multi-Cinema, Inc., in order to invite jury construction by their composite good judgment and common sense. Analysis of lack of or exercised due care does not pose an insurmountable jury responsibility.