Vera Sims, Appellee, v. Chicago Transit Authority, Appellant.

Gen. No. 45,820.

Opinion filed September 29, 1953. Rehearing denied November 12, 1953. Released for publication November 12, 1953.

THOMAS C. STRACHAN, JAMES O. DWIGHT, MARION J. HANNIGAN, ARTHUR J. DONOVAN, and JOHN W. FREELS, all of Chicago, for appellant.

BRUCE PARKHILL, of Chicago, for appellee.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an action for personal injuries by the plaintiff Vera Sims against the defendant, the Chicago

Transit Authority. A jury trial resulted in a verdict of $25,000 against the defendant. The usual after-verdict motions were made and overruled by the trial court and judgment was entered on the verdict.

Defendant's first contention for reversal is that plaintiff had no right to maintain her action since there had been no compliance with the statute requiring that notice be served on the defendant. Ill. Rev. Stat. 1951, ch. 111⅔, sec. 341 [Jones Ill. Stats. Ann. 21.2064(42)]. On August 1, 1947, when the accident occurred, the streetcar involved was operated by the Chicago Surface Lines. On June 8, 1948, when the complaint was filed, the Chicago Surface Lines had been succeeded by the Chicago Transit Authority. In the case of *Barrett v. Chicago Transit Authority,* 348 Ill. App. 83, this court held that the statute requiring that the Chicago Transit Authority be given six months' notice before the commencement of a civil action against it for damages on account of injury to the person did not apply when such injury was caused by the Chicago Surface Lines prior to its acquisition by the Chicago Transit Authority. This case is directly in point and decisive of the issue.

It is necessary to a proper understanding of the other issues in this case to set forth the essential facts. On August 1, 1947, shortly after 4:00 p. m., plaintiff was riding on one of defendant's southbound streetcars as a passenger on her way to work at a restaurant located at the southeast corner of Clark and Superior streets. Superior street is one block south and Huron two blocks south of Chicago avenue. Defendant's streetcars stop at Chicago and Huron streets but not at Superior street. It was customary for plaintiff to get off at Huron street. On the day of her injury an accident had occurred on the southbound car tracks in Clark street about a hundred feet south of Superior

street, which blocked the southbound tracks. The nature of this accident does not appear in the record but it is not ascribed to any fault of the defendant. Fifteen or more streetcars were lined up and the car in which the plaintiff was riding was stopped approximately a third of a block north of Superior. The north and south crosswalks at Clark and Superior were blocked, but east and westbound vehicular and pedestrian traffic moved freely through an opening that was left at Superior street. Two of plaintiff's witnesses who had crossed the street at this point with no difficulty testified to this effect. The southbound automobile traffic was not blocked and it moved freely. The plaintiff left the car from the front entrance. Two alternative routes to her destination were presented. The first, to walk to the west sidewalk and then to Superior street, where she could cross at a street intersection, or the second, to walk east between the two southbound streetcars which were four to eight feet apart in the middle of the block, cross the southbound track, cross the northbound track and then cross the street to the east sidewalk. She hesitated for a moment and then turned east, taking the very dangerous second route. She walked over the southbound tracks and was between the two sets of tracks, where she came to a stop and then continued. At that time a northbound streetcar, which had previously slowed down at Superior street, was approaching at a speed variously estimated from six to twenty miles per hour. There is some dispute between plaintiff's and defendant's witnesses as to whether the streetcar had given any signal by the ringing of a bell or gong. Plaintiff was struck by the car and her body came to rest immediately in front of the southbound streetcar from which she had alighted. There is nothing in the record to show that she was struck by the front of the northbound streetcar. The

northbound streetcar stopped abruptly in a distance estimated from four to ten feet. Some of defendant's witnesses said she was hurrying or running and was struck a glancing blow by the car. One of plaintiff's witnesses said that she came to a stop. One witness stated she saw plaintiff throw up her hand. There was a ventilator on the front of the northbound car which was open and projected from the west side of the car and was about four feet above the ground. After the accident it was found that her wrist was broken and her skull fractured. The steel ventilator of the streetcar was broken. It is plaintiff's theory that she was struck by this ventilator.

Plaintiff contends that at the time of the accident she was still a passenger. If she were, defendant owed her the highest degree of care commensurate with the practical operation of its streetcars to provide a safe place to alight and a safe passage from the streetcar. Instead, plaintiff contends that she was discharged by the defendant at a place of danger. This issue was submitted to the jury. The record shows that the plaintiff in the emergency was permitted to alight from the right side of the streetcar in the middle of the block at a point where there was no parallel track and no danger of the movement of other streetcars. Plaintiff's own witness testified that the automobile traffic was moving freely alongside the streetcar. There is no showing in the record that at the time she alighted from the car there were any automobiles or other traffic that prevented her from crossing to the west curb and the sidewalk which was a place of safety. Two of plaintiff's witnesses who were on the streetcar, alighted, walked to the west curb and then to their destination in safety. They said nothing about automobile traffic moving alongside the streetcar. Four of defendant's witnesses testified they saw plaintiff before the accident. None

318

of them mentioned any traffic moving between the streetcar and the west curb. The only testimony that in the slightest degree touches on this is from one of plaintiff's witnesses who said that prior to the accident and prior to the time that he saw the plaintiff he saw a truck go by. Subsequently, when he saw plaintiff get off the streetcar he was able to relate in detail her movements until his view of her was obstructed by her passing between the streetcars. This recital would have been impossible if motor vehicles were moving alongside the streetcar for they would have obscured his view. This testimony adds no substance to plaintiff's contention. Under all the facts, we conclude that the relationship of carrier and passenger terminated prior to the accident when plaintiff, instead of taking the safe route that was offered her by going to the west curb, elected to take the hazardous crossing to the east between the standing streetcars. Defendant's responsibility to plaintiff, therefore, was no greater than to any other pedestrian.

 Having reached this conclusion, we must now examine defendant's contention that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff lays much stress on the fact that the defendant's streetcars had blocked both crosswalks at Superior street, thus preventing her from making a safe crossing at this point. There is nothing in the record to show that the accident that resulted in the blocking of the streetcar tracks was caused by any negligence of the defendant. The record is also clear that there was an adequate passageway at Superior street to allow the free flow of east and westbound vehicular and pedestrian traffic. Two of plaintiff's witnesses had crossed at this point without difficulty, and it does not appear that they were confronted with any danger. We have decided that plaintiff elected to choose an

extremely hazardous crossing to reach her place of employment when a relatively safe route was open. As a result, she was confronted with the danger from movement of cars on the northbound track. In crossing between the cars on the southbound track she was hidden from the view of motormen on northbound cars. The testimony shows that the northbound car which struck the defendant slowed down before crossing Superior. The rate of speed that it was traveling, just prior to the time it injured the plaintiff, is variously estimated at from six to twenty miles per hour. It does not appear, however, that speed had anything to do with causing the accident. Plaintiff having taken the hazardous route, she must be presumed to have contemplated the danger of it. It was then her duty to proceed with great care and caution. *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627; *Moudy v. New York, C. & St. L. R. Co.*, 385 Ill. 446. Plaintiff was unable to testify as to the facts that caused the accident, and we do not have her explanation of the case. If she looked only the instant when she was struck, she failed to look with care and caution necessary for her safety. There is nothing in the record to show that plaintiff, if she had exercised due care, could not have seen defendant's streetcar.

The law is well settled that a person has no right to knowingly expose himself to danger and then recover damages for an injury which might have been averted by the use of reasonable precaution for his own safety. While it is true that the question of contributory negligence is one pre-eminently for the consideration of the jury, where there is no conflict in the evidence and the court can clearly see that the injury was the result of negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant. *Illinois Cent. R. Co.*

*v. Oswald,* 338 Ill. 270; *Wilson v. Illinois Cent. R. Co.,* 210 Ill. 603; *Beidler v. Branshaw,* 200 Ill. 425.

 As we read this record, we are of the opinion that the evidence clearly shows that plaintiff was guilty of contributory negligence as a matter of law. At the close of plaintiff's evidence and again at the close of all the evidence, defendant moved the court to instruct the jury to find it not guilty, and after the adverse verdict, moved the court for judgment in defendant's favor *non obstante veredicto.* A motion directing the jury to find for the defendant should have been allowed and the denial of it constituted reversible error. The judgment of the trial court is reversed and judgment notwithstanding the verdict is entered in favor of the defendant.

*Judgment reversed and judgment notwithstanding the verdict entered in favor of defendant.*

SCHWARTZ, P. J. and TUOHY, J., concur.