DEANA GARRETT, a Minor, by her Mother and Next Friend, Barbara L. Garrett, Plaintiff-Appellant, v. GRANT SCHOOL DISTRICT NO. 124, Defendant-Appellee (Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Defendant).

Second District   No. 2—84—1170

Opinion filed December 30, 1985.

Robert A. Shipley, of Baskin, Server, Berke & Weinstein, of Chicago, for appellant.

Glen E. Amundsen and G. Scott Williams, both of Querrey, Harrow, Gulanick & Kennedy, of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Deana Garrett, a minor, brought suit by her mother, Barbara L. Garrett, in the circuit court of Lake County against Grant School District No. 124 (the district) for injuries she sustained after alighting from the district's bus at Route 134 and Main Street in Long Lake. The injury occurred when she tripped crossing the railroad right-of-way of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (the Milwaukee Road) after exiting the bus. She sustained a broken knee when she fell. Her suit filed against the Milwaukee Road in Cook County was transferred to and consolidated with her Lake County suit against the district. The district moved for summary judgment, and the trial court granted it, including in its judgment a Rule 304(a) finding. (Supreme Court Rule 304(a), as amended April 27, 1984, effective July 1, 1984.) Plaintiff appealed.

The facts presented by the pleadings and excerpts of depositions of the parties show that on November 14, 1980, plaintiff was a 14-year-old freshman at Grant Community High School in Fox Lake. Plaintiff took a school bus home from school that day which was operated by the district. The driver stopped the bus near the intersection of Route 134 and Main Street in Long Lake to allow about 15 students, including plaintiff, to get off the bus and go on their way home. All of the students lived on the opposite, or north, side of the tracks. Parallel to and north of Route 134, intersecting Main Street, there was a railroad right-of-way and railroad tracks. The right-of-way and tracks were owned and maintained by the codefendant, the Milwaukee Road. There was no pedestrian sidewalk at the paved grade crossing which crossed the railroad tracks.

On the date of the accident, the district's bus stopped at the north edge of Route 134, facing west. As far as can be ascertained from the record, the bus was in a position perpendicular to and blocking Main Street, which T-intersected with Route 134 on the south side of the tracks. The plaintiff and the other students got off the bus at that point and stepped onto the north, gravel shoulder of Route 134. The place where plaintiff got off the bus was approximately 10 feet south of the railroad tracks. In plaintiff's deposition, after the students got off the bus "[i]t finished the U-turn. There is a stop sign there. And it gets back onto 134."

After she got off the bus, the plaintiff and the others walked north to the tracks and, as she attempted to cross the tracks, she fell. She caught her left foot on the top of the rail as she crossed. There was nothing unusual or defective about the rail she tripped on. There is nothing in the record identifying any defect in the rail or, if there was one, that the district knew or should have known it. At the point the plaintiff fell, she was approximately three feet west of the pavement of Main Street as it crossed the railroad tracks. She was crossing in the ungraded, unpaved area of the tracks. This was the place plaintiff crossed the right-of-way about 50% of the time. On days when there was no traffic, the plaintiff would cross on the paved portion of the road. At the time of the accident, the plaintiff did not cross on the paved portion of Main Street because there were cars using the two-way pavement to cross the tracks.

Plaintiff's two-count suit filed against the district alleged in count I that the plaintiff was a passenger on the bus owned and operated by the district; that on the date in question the operator of the bus, defendant's employee or agent, stopped the bus south of the railroad tracks; that the operator knew plaintiff and the other students had to

cross the railroad tracks in order to reach their homes; that the operator knew there was no sidewalk or other suitable crossing area which permitted pedestrians to safely cross the railroad tracks; that it was the defendant's duty to exercise the highest degree of care and caution in the ownership, operation and control of its school buses in order to avoid injury to its student passengers and to provide plaintiff with a safe place to alight from the bus. Despite that duty, plaintiff alleged, defendant or its agent was guilty of one or more of the following acts or omissions:

"(a) Carelessly and negligently owned, operated, managed and maintained its school bus so that, as a direct and proximate result thereof, the Plaintiff was seriously injured.

(b) Carelessly and negligently required Plaintiff to deboard and/or alight from its school bus at a place which Defendant knew, or should have known, was unsafe and which presented a special risk of injury to Plaintiff.

(c) Carelessly and negligently required Plaintiff to deboard and/or alight from its school bus at a place which Defendant knew, or should have known, required Plaintiff to cross an unreasonably dangerous railroad crossing in order to reach a place of safety.

(d) Carelessly and negligently routed the said school bus so as to deboard Plaintiff south of the said railroad tracks.

(e) Carelessly and negligently failed to provide Plaintiff with a safe place to alight from the said school bus.

(f) Carelessly and negligently failed to deboard Plaintiff from the said school bus on the north side of the aforesaid railroad tracks."

Count II charged the defendant was guilty of wilful and wanton misconduct in that it deboarded plaintiff and other children at a place which it knew, or should have known, was unsafe and that it wilfully and wantonly chose a place of discharging passengers which was unsafe and required its passengers to cross an ungraded railroad crossing.

The suit filed by the plaintiff against the Milwaukee Road alleged in essence that the Milwaukee Road should have constructed or maintained a sidewalk for pedestrians to cross the tracks, and it failed to provide a level area suitable for safe crossing.

The district moved for summary judgment on the grounds that it did not owe any further duty to the plaintiff once she had been safely deposited off the bus and that her fall was attributable, if at all, to the intervening conduct of the codefendant's maintenance of its prop-

erty. As noted, the instant appeal is taken from the circuit court's order granting that motion for summary judgment. In the order, the trial court specifically found that the district's duty to the plaintiff was discharged when she was let off the bus in a safe manner and place. The court's order further noted that the alleged defects and the maintenance of the tracks by the codefendant was an intervening cause. The court denied the Milwaukee Road's summary judgment motion, but specifically found it had no duty to construct or maintain a pedestrian crosswalk over its right-of-way. Application by plaintiff for leave to appeal from that particular portion of the court's order pursuant to Supreme Court Rule 308 was denied by this court.

The overriding issue framed by this appeal is whether summary judgment was properly granted. Specific issues raised are (1) whether defendant's conduct satisfied the duty it owed to plaintiff, and (2) whether defendant's conduct proximately caused plaintiff's injury.

Plaintiff contends the pleadings and depositions on file raised a genuine issue of material fact; *i.e.*, whether the bus would have been able to cross the tracks, let the students off on the north side of the tracks, and then turn around and go back out onto Route 134. Such a deboarding point, plaintiff argues, would have obviated the need for the students to cross the tracks and would have satisfied the "highest degree of care" duty which the district as a common carrier owed the students, including plaintiff. Consequently, plaintiff asserts that it was error for the court to grant the district's motion for summary judgment.

The district contends, and the court so found, that it fulfilled the duty it owed plaintiff when she safely disembarked on the south side of the tracks. Further, the district contends that it owed her no duty to have dropped her off on the north side of the railroad tracks.

The district attempts to distinguish itself and the degree of duty it owed to plaintiff on the basis the bus company in the case cited by plaintiff in support of her position, *Van Cleave v. Illini Coach Co.* (1951), 344 Ill. App. 127, was a private business. However, the *Van Cleave* court did not consider whether the defendant there was a common or private carrier to be controlling, and determined that it was "the duty of the defendant to operate the bus with the highest degree of care consistent with the practical operation of the bus." (344 Ill. App. 127, 129.) In *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, the court noted that a municipal corporation engaged in a nongovernmental function such as, *inter alia*, the operation of a public transportation system, would be held to the same standard of care as that imposed on a private party. (122 Ill. App. 3d 405, 408.)

By the same token, we believe, a school district engaged in the transportation of students by bus would likewise be held to the same standards of care as that imposed on a private party operating as a common carrier.

As noted in *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, a particular standard of care is imposed on those involved in the four "special relationships" which are described in section 314A of the Restatement. (Restatement (Second) of Torts sec. 314A (1965).) The four special relationships which give rise to a duty to protect another from harm are: (1) carrier-passenger, (2) innkeeper-guest, (3) business invitor-invitee, and (4) voluntary custodian-protectee under certain limited circumstances.

> "[A] common carrier must exercise the highest degree of care to its passengers, and the passenger-carrier relationship does not terminate until the passenger has had a reasonable opportunity to reach a place of safety. (*Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 337 N.E.2d 428.)" (*Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 208.)

Once a passenger has safely alighted, the carrier owes only a duty of ordinary care. *Sims v. Chicago Transit Authority* (1953), 351 Ill. App. 314, 319, *rev'd on other grounds* (1954), 4 Ill. 2d 60.

The existence of a duty is a question of law to be determined by the court (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552), whereas questions concerning a breach of that duty and proximate cause of the injury are questions for the trier of fact. *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994.

Although neither of the parties cite the case, the question of duty owed by a school district to its bus-riding students in the selection of bus routes and pickup points was considered and determined in *Posteher v. Pana Community Unit School District* (1981), 96 Ill. App. 3d 709. That case was an appeal from the circuit court's dismissal of plaintiffs' petition for a writ of *mandamus* and entry of a declaratory judgment for the respondent. Petitioners there had contended that the duty of the respondent school district extended beyond bare compliance with its statutory duty to provide free bus transportation to the parochial school which petitioners' children attended; to-wit: that the district had an inherent duty to provide the safest possible route and that the respondent had failed in that duty.

The court there determined:

> "We believe the extent of the duty imposed upon a school district in the selection of its school bus routes and pickup points is this: A school district has full discretion in establishing its

school bus routes and pickup points; it must comply with the terms of the applicable statutes and the rules, regulations and guidelines adopted by the State Board of Education; it must not act capriciously or arbitrarily, and it may not select routes or pickup points that needlessly expose the pupils to any serious hazards to safety exceeding those that normally attend school bus operations. As a corollary, the decision of a school district in selecting bus routes and pickup points will not be set aside unless there has been an abuse of its discretion." *Posteher v. Pana Community Unit School District* (1981), 96 Ill. App. 3d 709, 713.

In view of the foregoing, and since there is no apparent question of statutory compliance, it thus appears that the district here had a like duty to select a discharge point that did not "needlessly expose the pupils to any serious hazards to safety exceeding those which normally attend school bus operations."

■■ ■ Since the instant cause was decided in the context of a summary judgment proceeding, the general principles attending such proceedings as set forth in section 2—1005 of the Civil Practice Law are applicable. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) Pursuant to the terms of that section, the trial court may grant a party's motion for summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) In making its determination, the court considers the entire record and construes the evidence strictly against the moving party and liberally in favor of the opponent. In order to prevail in a negligence action, a plaintiff must prove that the defendant breached a duty owed to plaintiff and thereby proximately caused plaintiff's injury. (*Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903.) Discovery depositions may be used in the context of summary judgment proceedings "for any purpose for which an affidavit may be used." (87 Ill. 2d R. 212(a)(4); *Carter v. Dunlop* (1985), 138 Ill. App. 3d 58.) On appeal, the court will reverse the order granting summary judgment if it determines that a material question of fact exists and that the moving party is not entitled to judgment as a matter of law. *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789.

As noted in *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1058, a motion for summary judgment is a "fact motion."

"The phrase 'fact motion' refers not, as plaintiff's assertion suggests, to the questions raised by the motions, but rather to

the information on which the motions and their resolutions must be based. [Citations.] Fact motions must be based on facts, as proven by admissions or by sworn and competent witnesses whose testimony has been reduced to writing. Consideration of such motions are preliminary inquiries to determine whether there is a genuine issue of material fact which must be determined by the factfinder. [Citation.] 'Genuine' is construed to mean that there is evidence to support the position of the nonmoving party. [Citation.]" 129 Ill. App. 3d 1050, 1058.

Considering the pleading and deposition excerpts at bar, it appears that a "genuine" issue of material fact exists.

■ Like the *Sims* case referred to above (*Sims v. Chicago Transit Authority* (1953), 351 Ill. App. 314, *rev'd on other grounds* (1954), 4 Ill. 2d 60), it appears the plaintiff here was discharged in as relatively a safe place as possible under the circumstances; that is, on the shoulder of the road on the south side of the tracks where there were no sidewalks. Unlike the *Sims* case, however, where the circumstances causing the location of plaintiff's point of discharge were found to be beyond the defendant's control (*Sims v. Chicago Transit Authority* (1954), 4 Ill. 2d 60, 65-66), the record here shows "the circumstances," that is, the choice of the location for discharging the students, was completely within the control of the school district. Whether the school district's choice of that location as opposed to one on the north side of the tracks "needlessly expose[d] the pupils to any serious hazards to safety exceeding those that normally attend school bus operations"—genuinely was placed in issue.

That material issue of fact exists in light of the record, which shows the majority, if not all, of the children being discharged lived on the north side of the tracks; there was no pedestrian crosswalk; 50% of the time traffic conditions did not permit crossing on the paved portion of the railroad track crossing and students crossed to the north side by stepping over the tracks in the ungraded railroad bed; school buses operated by others than the defendant district discharged pupils on the sidewalks on the north side of the tracks, reversed direction, crossed the tracks to the south side and proceeded onto Route 134; and excerpts from one of the district's bus driver's deposition indicate there is room to let the students off near the train station, and then back out to make a U-turn.

The situation presented by the instant cause is factually inapposite to that presented in *Borus v. Yellow Cab Co.* (1977), 52 Ill. App. 3d 194. The plaintiff in that case was left off in the street and, by reason of her coat being caught in the door upon closing it, she was

unable to reach a "place of safety" before the taxi took off again, dragging her in the street for some distance before the driver heard her shouts. Because the plaintiff there had not been able to alight and reach a place of safety, the carrier-passenger relationship was viewed as not yet having terminated, and the defendant there still owed the plaintiff the highest degree of care consistent with its mode of conveyance and practical operations. In contrast, plaintiff here had alighted and had reached a reasonable place of safety, the shoulder of the road. Thus, the district's duty to render the plaintiff the highest degree of care imposed on carriers had terminated. Despite the conclusion that the district did not owe plaintiff the highest degree of care, the district nevertheless owed plaintiff the duty of ordinary care. The record shows "the entire intersection" was a designated bus stop. As such, it may be analogized to the premises of a station or depot upon which premises the carrier's duty to its passenger is the exercise only of ordinary care. (*Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 499; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 377.) "What constitutes ordinary care depends upon the circumstances which call for its use" (*Sims v. Chicago Transit Authority* (1954), 4 Ill. 2d 60, 66), and the degree of care required to be exercised increases as the danger increases. *Katamay v. Chicago Transit Authority* (1972), 53 Ill. 2d 27, 30.

In this regard, plaintiff contends, correctly so, that the district had the duty to provide her with a reasonably safe means of egress from the point of deboarding. In *Davis v. South Side Elevated R.R. Co.* (1920), 292 Ill. 378, 383, it was noted:

> " 'The duty owing to passengers in the use of stational facilities is often stated in absolute terms, as, "it is the duty of a carrier to provide reasonably safe depots, platforms and approaches for the use of passengers," but in the same opinion or elsewhere by the same court it will generally, but not invariably, appear that by this term, though absolute in form, only ordinary care, as distinguished from the highest care, is intended.' "

Although it is clear the district here did not own or lease the property, the record shows that when the bus stopped to let the students off, it blocked the intersection, undoubtedly simultaneously blocking the flow of traffic across the tracks. The record also shows the bus did not wait after the students disembarked, but immediately proceeded to complete its U-turn onto Route 134. The record shows the district knew the majority, if not all, of the students had to cross the tracks, which had no pedestrian crosswalk, and that students of-

ten crossed the tracks other than on the pavement when there was vehicular traffic.

On this record a genuine issue of material fact is presented as to whether fulfillment of the district's duty of ordinary care to provide plaintiff with a safe means of egress from her place of deboarding required it to choose a different location for its bus stop.

In sum, the record does not show as a matter of law that the defendant's conduct satisfied the duty it owed plaintiff, and summary judgment was improvidently granted.

In granting the district's motion for summary judgment, the court found not only that the district had satisfied its duty owed to plaintiff "when she was let off the bus in a safe manner and safe place," but also that: "The existence of alleged defects in the railroad tracks owned by co-defendant Milwaukee Road was an intervening cause of the injury sustained by the plaintiff." Plaintiff takes issue with the court's finding, contending that although the railroad tracks were an intervening force which contributed to her injury, the intervention of that force was a foreseeable one which was within the range of reasonable anticipation as a consequence of the district's wrongful conduct in discharging her from the bus in the manner and location which it did. Consequently, plaintiff argues, the intervention of this foreseeable force did not break the chain of legal causation, and it cannot be said as a matter of law that the district's conduct was not, at least, a proximate cause or one of the proximate causes of her injury.

The district argues the plaintiff's deposition testimony does not indicate there was any defect or condition of the rail she tripped on which caused or contributed to her fall, and "[p]resumably there is no claimed pothole, depression, crack, debris or other such condition to which the plaintiff attributes her fall." In the plaintiff's deposition testimony, she stated her one foot was on "dirt" when she was lifting her other foot over the rail. The railroad track bed was gravel; the place plaintiff crossed, approximately 3 feet from the west edge of the pavement, was not a level surface, and crossing in that area required a step up first, and then over.

The district contends that its conduct, at most, did not prevent the plaintiff from having to cross the railroad tracks at some point, and that it was the condition of the railroad right-of-way or the plaintiff's own carelessness which was the legal and proximate cause of her injury. The district points out it was not the mere existence of the railroad tracks which the court found to be the intervening cause but, rather, "the alleged maintenance of an unspecified hazardous condi-

tion by the Milwaukee Road." It contends it was "a very extraordinary event" to anticipate that the plaintiff would cross the tracks at other than the paved area, or that plaintiff would trip on a rail as she walked across the tracks where there were "no apparent defects."

" 'Proximate cause' is a term of art encompassing the distinct concepts of cause in fact and legal cause; once it is established from an analysis of the facts that the defendant's conduct was a cause in fact of plaintiff's injury, the next question is whether the defendant should be legally responsible for what he caused. [Citation.]" *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1020.

In discussing "cause in fact," Prosser notes the rule derived by courts commonly known as the "but for" or *"sine qua non"* rule; to-wit: "The defendant's conduct is not a cause of the event, if the event would have occurred without it." (Prosser, Torts sec. 41, at 238-39 (4th ed. 1971).) Prosser notes further, however, that the "but for" test fails in one situation: if two causes concur to bring about an event, and either one of them, operating alone, would be sufficient to cause the identical result, some other test is needed. Thus, a broader rule than the "but for" test has been generally accepted; that is, "[t]he defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about." Prosser, Torts sec. 41, at 239-40 (4th ed. 1971).

"The law of probable cause holds that an injury which is the natural and probable consequence of an act of negligence is actionable and such an act is the proximate cause of the injury. The injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either a remote cause, or no cause whatever of the injury." *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 80.

Proximate cause is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be a question of law when the facts are not only undisputed, but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 318; *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 203.

The facts underlying the attending circumstances here are not undisputed. What is "reasonably foreseeable" is judged by what was apparent to the defendant at the time of the complained-of conduct, rather than by what may appear through the existence of hind-

sight. (*Morgan v. Dalton Management Co.* (1983), 117 Ill. App. 3d 815.) In its answer to plaintiff's complaint, the district denied, *inter alia*, that it knew it was necessary for the plaintiff and other students alighting from the school bus at the place where they were required to deboard to cross the railroad tracks in order to reach their respective homes, although it admitted it knew where the students resided when they were deboarded. It denied it knew there was no sidewalk or other suitable crossing area which permitted pedestrians to safely cross the railroad tracks, and it denied that it required plaintiff to deboard at a place which it knew or should have known required her to cross an unreasonably dangerous railroad crossing in order to reach a place of safety.

The district's denials raise issues of fact which prevent the issue of proximate cause from being decided as a matter of law on a motion for summary judgment. What was reasonably foreseeable to the district at the time it deboarded the plaintiff may only be ascertained from the facts surrounding the occurrence, and those facts are in contravention.

The judgment of the circuit court of Lake County is reversed, and the cause remanded for further proceedings.

Reversed and remanded.

NASH, P.J., and LINDBERG, J., concur.