2016 IL App (2d) 150554
No. 2-15-0554
Opinion filed March 31, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| JANE DOE, as Next Best Friend of J.D., a Minor, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-L-216 |
| PETER A. SANCHEZ, | ) ) | |
| Defendant | ) ) | Honorable Eugene G. Doherty, |
| (First Student, Inc., Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal presents two certified questions concerning what duty a private contractor owes the students it transports and whether it may be liable for the misconduct of an employee committed outside the scope of employment.

¶ 2    Plaintiff, Jane Doe, brought suit against Peter Sanchez and his employer, First Student, Inc., alleging that Sanchez inappropriately touched her daughter, J.D., a minor, during the course of his duty as J.D.'s school bus driver. First Student filed a combined motion to dismiss the counts against it. It argued, in pertinent part, that it could not be held vicariously liable for Sanchez's alleged misconduct, because the conduct was committed outside the scope of his

employment. It also argued that it was not acting as a common carrier and that therefore its duty of care toward J.D. was not heightened.

¶ 3    The trial court denied First Student's motion to dismiss, holding, in pertinent part, that First Student owed J.D. a standard of care as if it were operating as a common carrier and that it could be vicariously liable for the misconduct of Sanchez, even for misconduct committed outside the scope of employment. First Student filed a motion to certify two questions for appeal pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015)), and the trial court granted its motion. In short, the questions were whether First Student should be held to the same standard of care as a common carrier and whether it could be vicariously liable for the actions of its employee committed outside the scope of employment. We allowed the interlocutory appeal.

¶ 4    For the reasons herein, we answer both certified questions in the affirmative.

¶ 5                                    I. BACKGROUND

¶ 6    Plaintiff filed her complaint against Sanchez and First Student on July 15, 2014. The complaint alleged that Sanchez was an employee of First Student, which was hired by Prairie Hill School District (Prairie District) to provide bus transportation services for students in the district. The complaint continued that J.D. was a student in Prairie District and that, between April 14 and May 23, 2014, Sanchez touched J.D.'s genitals and buttocks without consent while she was riding on the bus that Sanchez was operating. Plaintiff alleged that the touching occurred during the course of Sanchez's duty as a bus driver and that First Student was responsible for ensuring the students' safety on the bus.

¶ 7    The complaint alleged six counts against Sanchez, for battery, assault, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and a violation of the Illinois Gender Violence Act (740 ILCS 82/5 (West 2014)). It

alleged the same six claims against First Student (counts VII through XII) plus a claim for negligence (count XIII).

¶ 8 On August 21, 2014, First Student filed a combined motion to dismiss plaintiff's complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2014)). First Student argued that sexual assault is, by its nature, personally motivated and therefore is an act outside the scope of employment. Accordingly, First Student argued, Sanchez's alleged sexual assault was outside the scope of his employment and, therefore, First Student could not be vicariously liable for it.

¶ 9 First Student also argued that it was not acting as a common carrier. It argued that the relevant test was whether it served all of the public alike. *Doe v. Rockdale School District*, 287 Ill. App. 3d 791, 794 (1997). It continued that, because it transported only students for Prairie District, not all members of the general public, it was not acting as a common carrier. In any event, First Student contended, a common carrier is not vicariously liable for the intentional torts and criminal acts of its employees outside the scope of employment.

¶ 10 On November 24, 2014, the trial court held a hearing on First Student's combined motion to dismiss. At the hearing, the trial court was particularly concerned about whether to impose on a private carrier a standard of care normally reserved for a common carrier.

¶ 11 On January 21, 2015, the trial court issued its memorandum opinion and order on the combined motion to dismiss. In its memorandum, the trial court recognized that First Student did not meet the definition of a common carrier in Illinois. A common carrier was one that would serve all of the public alike (*Illinois Highway Transportation Co. v. Hantel*, 323 Ill. App. 364, 375 (1944)), whereas a private carrier would serve only certain persons by special agreement in particular instances (*Rockdale School District*, 287 Ill. App. 3d at 794). However,

it continued to examine whether First Student owed the same high duty of care regardless. It reviewed *Green v. Carlinville Community Unit School District*, 381 Ill. App. 3d 207, 213 (2008), where the court held that the school district, although not a common carrier, owed its students the same standard of care that a common carrier would.

¶ 12    According to the trial court, it "certainly makes no difference to the child whether the driver is employed by the school, or by a contractor hired by the school." Yet, the court noted, it had to exercise caution because, while the rationale of *Green* appeared applicable, the facts were not directly on point. The court therefore posed two questions: (1) whether there was authority for imposing a heightened standard of care on a private provider of school bus services; and (2) if so, whether there was authority that a private employer could be vicariously liable for the criminal actions of its employee.

¶ 13    The trial court answered its first question in the affirmative, finding that under *Garrett v. Grant School District No. 124*, 139 Ill. App. 3d 569 (1985), First Student owed J.D. a heightened standard of care. The court reasoned that the conclusion in *Garrett*, although "difficult to unwind," was that all parties transporting students owed the students the same duty of care. Regardless of whether a party was a public school district or a private entity, the party owed the students the highest duty of care, the same as if it were operating as a common carrier.

¶ 14    Next, the trial court answered its second question in the affirmative, finding that First Student could be vicariously liable for Sanchez's misconduct outside the scope of his employment. It relied on *Green*, 381 Ill. App. 3d at 212-13, and *Dennis v. Pace Suburban Bus Service*, 2014 IL App (4th) 132397, ¶ 18, to hold that, when common carrier liability is imposed, an employer may be liable for its employee's actions outside the scope of employment.

¶ 15    Nevertheless, the trial court had concerns. In particular, it noted a lack of controlling

authority precisely on point with the facts of this case. It explained that, while the protection of school children is a well-recognized public policy concern, Illinois statutory law generally makes it more difficult for plaintiffs to recover in negligence cases against public schools. See 745 ILCS 10/1-101 *et seq.* (West 2014). For example, the court noted, under *Green*, a school district may be liable for the criminal misconduct of a bus driver but not necessarily for the misconduct of a teacher or other employee who cares for the children during the school day. Finally, the court noted that, even if the common-carrier duty applies to a private entity such as First Student, vicarious liability does not necessarily follow. In other words, a heightened standard of care for conduct *within* the scope of employment does not necessarily equate to liability for misconduct *outside* the scope of employment. The court then suggested that the parties file a motion for a Rule 308 appeal.

¶ 16    On May 13, 2015, First Student filed a timely motion to certify the following two questions for Rule 308 appeal:

> "(1) If a privately contracted provider of student busing services owes the same elevated duty of a common carrier which would be imposed on a school district providing the same services, then,
>
> (2) Does this quasi-common carrier standard of care necessarily require that common carriers be held vicariously liable for their employee's intentional torts, such as sexual assaults, that are committed outside the scope of their employment, without regard to whether they have any knowledge of any such propensity?"

¶ 17    On May 15, 2015, the trial court granted First Student's motion, certifying the two questions therein verbatim. It found that its January 21, 2015, order involved questions of law as to which there were substantial grounds for difference of opinion and that an immediate appeal

could materially advance the ultimate termination of the litigation.

¶ 18                                II. ANALYSIS

¶ 19    Our review of certified questions on permissive interlocutory appeal is governed by Rule 308. See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 56-57 (2007). Rule 308 permits an appeal of an interlocutory order where the trial court finds that the order involved a question of law on which there are substantial grounds for difference of opinion and that an immediate appeal from the order could materially advance the ultimate termination of the litigation. *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 133 (2008). If the trial court makes these two necessary findings, we may hear an interlocutory appeal at our discretion. Ill. S. Ct. R. 308(a) (eff. Jan 1, 2015); *Rommel v. Illinois State Toll Highway Authority*, 405 Ill. App. 3d 1124, 1125 (2010).

¶ 20    We agree that this appeal presents questions of law for which there are substantial grounds for difference of opinion. The certified questions revolve around the existence of a tort duty, which is a question of law. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 20. As the trial court stated, there is no directly applicable case law answering whether a private busing company owes students a heightened standard of care and, if so, whether it can be vicariously liable for its employees' acts outside the scope of employment. We also agree that this appeal could materially advance the ultimate termination of the litigation. If we were to answer either question in the negative, the trial court should have dismissed the counts against First Student. Therefore, we exercise our discretion to answer the certified questions on appeal.

¶ 21    Certified questions under Rule 308 are issues of law, and therefore our review is *de novo*. *De Bouse v. Bayer, AG*, 235 Ill. 2d 544, 550 (2009); *Dale v. South Central Illinois Mass Transit District*, 2014 IL App (5th) 130361, ¶ 11.  We address each question in turn.

¶ 22          A.  Question 1:  Whether to Apply A Common-Carrier Standard of Care

¶ 23    The first question is whether a private contractor providing student busing services owes the students it buses a standard of care commensurate with that of a common carrier.  First Student argues that it does not.  First Student argues that it was not operating as a common carrier, because it was not transporting all members of the public indiscriminately; it was transporting only certain students from Prairie District.  Plaintiff does not dispute that First Student does not meet the traditional definition of a common carrier.  See *Browne v. SCR Medical Transportation Services, Inc.*, 356 Ill. App. 3d 642, 647 (2005) (explaining that a common carrier serves the general public indiscriminately).  Rather, plaintiff argues that First Student should be held to the same standard regardless.

¶ 24    First Student argues that among the appellate courts there is a "difference of opinion on this issue" of whether to impose a common-carrier duty on a private company that buses students.  Compare *Rockdale School District*, 287 Ill. App. 3d at 794-95 (holding that the school district, as principal of the agent school busing company, was not acting as a common carrier), and *Browne*, 356 Ill. App. 3d at 647-48 (holding that medical-transportation service was not a common carrier), with *Green*, 381 Ill. App. 3d at 213 (holding that a school district transporting students owed the students the same standard of care as a common carrier), and *Garrett*, 139 Ill. App. 3d at 575 (holding that a school district engaged in student-transportation services should be held to same standard of care as a common carrier).  However, First Student argues that neither *Green* nor *Garrett* controls the question before us.   It argues that *Green*'s holding

concerned only school districts and does not apply to private entities. See *Green*, 381 Ill. App. 3d at 214 (the issue before the court was "to determine what common-law duty a school district owes to its student passengers when they are being transported on the school district's bus"). First Student further argues that *Garrett* is factually distinguishable from this case because *Garrett* did not involve allegations of sexual assault. Moreover, the issue in *Garrett* was whether the school district provided a reasonably safe means of egress for students at the location of the bus stop. *Garrett*, 139 Ill. App. 3d at 576 (school district had duty to select a discharge point that did not needlessly expose students to serious safety hazards). Its central holding was not that the school district owed a higher standard of care to the students but rather that it owed only an ordinary standard of care. *Id.* at 578. Therefore, First Student argues, *Garrett* is inapplicable here.

¶ 25    Plaintiff responds that, under *Green* and *Garrett*, First Student should be held to the same standard of care as a common carrier. Plaintiff argues that students on a school bus, like individuals engaging a common carrier, depend on the school district, or the bus company it hires, to ensure personal safety. See *Green*, 381 Ill. App. 3d at 213. Plaintiff continues that *Green* is consistent with *Garrett*, which held that a school district engaged in the transportation of students would be held to the same standard of care as a private party operating as a common carrier. *Garrett*, 139 Ill. App. 3d at 575.

¶ 26    Whereas *Green* and *Garrett* addressed the duty of school districts, plaintiff, citing *Van Cleave v. Illini Coach Co.*, 344 Ill. App. 127 (1951), argues that the same rule applies to private entities. In *Van Cleave*, the court held that "those engaged in the transportation of school children should be held to exercise the highest degree of care." *Id.* at 129. The *Van Cleave* court reasoned that whether the defendant transportation company was acting as a common carrier or a

private carrier did not control; what mattered was that it was operating a bus to transport school children. *Id.* Plaintiff argues that *Green*, *Garrett*, and *Van Cleave*, read together, support that a private contractor providing student busing services should be held to the same standard of care as a common carrier. Plaintiff reiterates the trial court's words that it "certainly makes no difference to the child whether the driver is employed directly by the school or by a contractor hired by the school."

¶ 27 We agree with plaintiff and answer the first certified question in the affirmative: A private contractor providing student transportation services owes the students it transports the same duty of care imposed on a common carrier—that is, the highest standard of care. See *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226 (2010) (a common carrier has a duty to its passengers to exercise the highest degree of care). Our answer is premised on Illinois precedent and the strong public policy to ensure the safe transportation of students.

¶ 28 The question here closely resembles the question posed and answered in *Green*, which was whether a school district that provided student busing services owed the students a heightened standard of care, even though the school district was not acting as a common carrier. *Green*, 381 Ill. App. 3d at 213. In *Green*, the plaintiff was a girl who attended kindergarten in the defendant school district and told her mother that her school bus driver had sexually molested her. *Id.* at 209. The plaintiff's complaint against the school district was premised on her allegation that the school district was acting as a common carrier, although, during the trial court proceedings, the plaintiff also argued that the school district owed her the highest degree of care regardless of whether it was classified as a common carrier. *Id.* at 209-10. The trial court granted summary judgment in favor of the school district, holding in pertinent part that the school district was not a common carrier. *Id.* at 210.

¶ 29    On appeal, the court affirmed that the school district was not a common carrier, but it did not stop its analysis there. *Id.* at 212.  The court continued that the school district, in providing bus transportation services, was "performing the same basic function, transporting individuals," as that of a common carrier. *Id.* at 213.  The court reasoned that students relied on the school district to ensure their safety while riding the bus, just as passengers rely on a common carrier. *Id.*  Accordingly, the court concluded that school districts operating school buses owed their students the same high degree of care that common carriers owe their passengers. *Id.*  It further reasoned that "[t]o hold that adults on public transportation buses are entitled to more protection than the most vulnerable members of our society—namely, children on a school bus—is ludicrous." *Id.*  Accordingly, it reversed the grant of summary judgment on those counts concerning the school district's standard of care. *Id.* at 214.  However, the court limited its holding "to the common-law duty school districts owe student passengers while the students are being transported on a school bus." *Id.*

¶ 30    The one notable difference between our case and *Green* is that here the school district contracted out its student busing services.  However, we do not find that this difference compels us to diverge from *Green*'s core rationale, which is that school children require the highest standard of care in their transport.

¶ 31    Furthermore, *Garrett* and *Van Cleave* support our reliance on *Green*.  In *Garrett*, the plaintiff, a high school student, was injured when she tripped over railroad tracks after exiting the bus. *Garrett*, 139 Ill. App. 3d at 571.  Part of the plaintiff's complaint against the school district was that the bus driver negligently failed to provide her a safe place to alight from the bus. *Id.* at 573.  The school district moved for summary judgment on the basis that it did not

owe the plaintiff any further duty once she safely left the bus, and the trial court granted summary judgment in favor of the district. *Id.* at 573-74.

¶ 32    On appeal, the court addressed the issue of the school district's duty.  It stated that a school district engaged in the transportation of students by bus should be held to the same standard of care as a private party operating as a common carrier.  *Id.* at 575.  The rest of the discussion turned away from a school bus driver's duty to students while transporting them to the driver's duty once they have alighted.  *Id.* at 575-79.  In our case, the issue is only whether the bus driver owed the student a higher duty of care while transporting her, the same issue present in *Green*.  Therefore, the only relevant takeaway from *Garrett* is its statement that a transporter of students owes those students a heightened standard of care.  *Id.* at 575.

¶ 33    Unlike *Green* and *Garrett*, *Van Cleave* directly addressed the duty a private entity owed the students it transported.  In *Van Cleave*, the plaintiff, a six-year-old boy, alleged that the defendant, a private transportation company, had operated his school bus negligently, resulting in his injury.  *Van Cleave*, 344 Ill. App. at 128.  After the plaintiff won a jury verdict, the defendant appealed, and the parties argued whether the defendant was a common carrier.  *Id.* at 129.  However, the *Van Cleave* court did "not deem it to be controlling whether the defendant was a common carrier or a private carrier."  *Id.*  Rather, it held that the proper standard of care for any carrier engaged in the transportation of school children was the highest degree of care.  *Id.*  The court ultimately affirmed the judgment against the defendant.  *Id.* at 132.

¶ 34    Furthermore, we disagree with First Student that there is a difference of opinion in Illinois on whether a transporter of students owes a heightened standard of care.  First Student cites two cases that it argues stand in opposition to *Green* and *Garrett*.  In *Rockdale School District*, 287 Ill. App. 3d at 795, the court addressed whether the school district was acting as a

common carrier and answered the question in the negative. Likewise, in *Browne*, 356 Ill. App. 3d at 647-48, the court held that the defendant was not acting as a common carrier. *Green* is consistent with these cases insofar as the *Green* court also found that the defendant school district was not a common carrier. Importantly, however, the *Green* court did not end its analysis there. It answered a question that was not present before the courts in *Rockdale School District* and *Browne* but is present here: whether a transporter of students owes them a heightened duty of care regardless of whether it is classified as a common carrier. To that end, *Rockdale School District* and *Browne* do not aid us, because they examined only whether the defendants met the definition of a common carrier. Here, plaintiff admits that First Student does not meet the definition.

¶ 35    Accordingly, we hold that a private busing company owes the students it buses the same duty of care as a common carrier would. *Green* clearly holds that common carrier liability can apply to a school district transporting students, and *Van Cleave* dispelled the notion that it matters who is transporting the students—a private entity that transports students is held to the same high standard of care.

¶ 36    We recognize that the trial court questioned whether this holding was consistent with the provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2014)), and we briefly address this concern. In particular, the trial court questioned whether it should impose liability for the misconduct of a school bus driver when school teachers and other employees might not be liable for the same misconduct. See 745 ILCS 10/3-108 (West 2014) (generally, a public employee who supervises activities on public property is not liable for an injury unless the employee willfully and wantonly disregarded his or her supervisory duties).

¶ 37    The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from governmental operations. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001).  It does this by granting immunities, but it does not create duties.  *Id.*  Importantly, the existence of a duty and the existence of an immunity are separate issues.  *Id.*  Only after a court determines that a duty exists does it address whether the Tort Immunity Act provides immunity for a breach of that duty.  *Id.*

¶ 38    First Student is not a public entity, and therefore the Tort Immunity Act does not directly apply.  Moreover, the issue of liability for school districts, teachers, and employees in the course of caring for students is not before us; the narrow question before us is what duty a transporter owes the school children it transports.  Finally, and importantly, we stress the distinction between finding a duty and applying immunity.   Even if the legislature provides an immunity, as it has for various public employees through the Tort Immunity Act, the initial duty analysis is not affected.  See *Barnett v. Zion Park District*, 171 Ill. 2d 378, 386-88 (1996) (we still look to the common law and other statutes to determine legal duty before we examine whether the Tort Immunity Act provides immunity from liability).  In answering the first certified question, we are concerned only with duty.  Accordingly, our decision does not conflict with the provisions or the intent of the Tort Immunity Act.

¶ 39    Finally, we stress the importance Illinois rightly places on the safety of school children. Illinois has a public policy favoring the safe transportation of students that is supported by the courts, the legislature, and our constitution.  *Board of Education of School District U-46 v. Illinois Educational Labor Relations Board*, 216 Ill. App. 3d 990, 1002 (1991) ("After thoroughly examining the Constitution, the laws and judicial decisions of this State *** the inevitable conclusion is that a public policy favoring the safe transportation of school children

exists."); see *Chicago Transit Authority v. Amalgamated Transit Union*, 399 Ill. App. 3d 689, 698 (2010) (determining that there were well-defined and dominant public policies favoring the safe and secure transportation of children and the protection of the public, especially juveniles, from sex offenders). Moreover, the high duty of care a common carrier owes its passengers is premised on the carrier's unique control over its passengers' safety. *Sheffer v. Springfield Airport Authority*, 261 Ill. App. 3d 151, 154 (1994). Likewise, a school bus driver is in unique control over the safety of students because he or she is often the only adult present during the commute. As the trial court astutely observed, school children are no less vulnerable on a bus operated by a private contractor than on one operated by a school district. Therefore, there is no reason to hold a private contractor to a lower standard of care than a school district. Rather, public policy compels that we impose the highest standard of care on a transporter of students, regardless of whether that transporter is a private contractor or a public entity. Illinois authority is clear that our focus is on the safety of the school children, not on the status of the bus driver. See *Green*, 381 Ill. App. 3d at 213 ("In fact, holding a school district that buses children to such a high standard is more compelling than holding a common carrier to the same standard.").

¶ 40    Accordingly, we answer the first certified question in the affirmative.

¶ 41                    B. Question 2: Whether to Permit Vicarious Liability

¶ 42    Having answered that a private contractor providing student transportation services is held to a standard of care commensurate with that of a common carrier, we now decide whether it may be liable for the misconduct, in particular the intentional torts, of its employees outside the scope of employment.

¶ 43    First Student argues that it may not be held vicariously liable for the misconduct of its employees outside the scope of employment, regardless of a heightened standard of care. It

argues that sexual assault is outside the scope of employment because such an act is either personally motivated or highly unusual and bears no relation to a bus driver's job. See *Deloney v. Board of Education of Thornton Township*, 281 Ill. App. 3d 775, 784 (1996) ("In the context of *respondeat superior* liability, the term 'scope of employment' excludes conduct by an employee that is solely for the benefit of the employee.").

¶ 44 First Student continues that both Illinois case law and the Restatement (Second) of Agency (Restatement) disfavor vicarious liability of an employer for a sexual assault by its employee. See *Webb v. Jewel Cos.*, 137 Ill. App. 3d 1004, 1008 (1985) (sexual molestation of young girl by security guard bore no relation to employer's business, and the employer could not be liable); Restatement (Second) of Agency § 231 cmt. a (1958) (explaining that the magnitude of the crime matters; serious crimes are not expected and therefore not in the scope of employment). Moreover, First Student argues that Illinois courts have consistently found that school districts are not liable for misconduct outside the scope of employment of teachers, coaches, and staff in the course of caring for children. See *Doe v. Lawrence Hall Youth Services*, 2012 IL App (1st) 103758, ¶ 30 (sexual assault was outside the scope of employment and could not be imputed to the school under the doctrine of *respondeat superior*); *Mueller v. Community Consolidated School District 54*, 287 Ill. App. 3d 337, 344-45 (1997) (school district could not be vicariously liable for coach's sexual assault of a student). First Student also cites the dissent in *Green*, which disagreed with the majority that a common carrier could be vicariously liable for the intentional torts of its employees. *Green*, 381 Ill. App. 3d at 216-18 (Cook, J., dissenting).

¶ 45 Plaintiff responds that Illinois courts have long held that a common carrier is liable for the acts of its employees even if those acts are outside the scope of employment, citing *Chicago & Eastern R.R. Co. v. Flexman*, 103 Ill. 546 (1882). Plaintiff argues that two more recent cases

follow *Flexman* and support the imposition of vicarious liability: *Green*, 381 Ill. App. 3d at 213, and *Dennis*, 2014 IL App (1st) 132397, ¶ 16. Plaintiff argues that, in *Dennis*, the plaintiff sued the defendant bus company under a theory of *respondeat superior*, alleging sexual assault by one of its bus drivers. *Id.* ¶¶ 1-2. The defendant argued that it could not be liable for a sexual assault by its employee, because sexual assault was not within the scope of employment. *Id.* ¶ 18. Citing *Flexman*, the *Dennis* court rejected this argument because common-carrier liability extended to employees' intentional acts outside the scope of employment. *Id.* Plaintiff continues that the *Green* court came to the same conclusion—the school district could be liable for the bus driver's acts outside the scope of employment. *Green*, 381 Ill. App. 3d at 213.

¶ 46 We agree with plaintiff and answer the second question in the affirmative: A private contractor may be liable for the sexual assault of a student by its employee who is transporting the student, even though sexual assault, by its very nature, is outside the scope of employment. However, we note that, although this liability functions as vicarious liability, we do not rely on a theory of *respondeat superior*. Instead, we rely on a common carrier's nondelegable duty. We explain as follows.

¶ 47 *Green* is one of the most recent Illinois cases to address whether a common carrier (or an employer acting as one) may be liable for its employee's acts outside the scope of employment. We have already discussed *Green* in answering the first certified question (*supra* ¶ 29), and have explained that it supports imposing a heightened standard of care on a transporter of students. *Green* further held that "a common carrier can be liable for the intentional acts of its employees even if the intentional act is outside the employee's scope of employment and does not benefit the employer." *Green*, 381 Ill. App. 3d at 213.

¶ 48    First Student argues that the *Green* majority erred in permitting vicarious liability for an employee's intentional tort outside the scope of employment, and it relies on Justice Cook's dissent.    Justice Cook stated that vicarious liability for misconduct outside the scope of employment does not necessarily follow from a common carrier's heightened duty.    *Id.* at 217 (Cook, J., dissenting).    Justice Cook took issue with the majority's reliance on *Flexman*, suggesting that it was unclear whether the employee in *Flexman* was acting within the scope of employment.    *Id.*    Moreover, he asserted that "[w]hatever the holding in *Flexman*, Illinois now follows the Restatement, which would not impose vicarious liability for acts outside the scope of employment."    *Id.* (citing *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163-65 (2007)).

¶ 49    Upon an examination of *Flexman*, we disagree with Justice Cook that it was uncertain whether the employee was acting within the scope of employment.    The pertinent facts in *Flexman* are as follows.    The plaintiff, a passenger on a railcar, lost his watch on the train.    *Flexman*, 103 Ill. at 548.    With the permission of the conductor, after arriving at his intended destination he remained on the train to continue searching for his watch.    *Id.*    Another passenger assisted the plaintiff in his search, and, while helping, the other passenger asked the plaintiff who he thought had his watch.    *Id.*    The plaintiff replied " '[t]hat fellow,' " and pointed to the brakeman, whereupon the brakeman swung a railroad lantern into the plaintiff's face.    *Id.* at 549. Given these simple facts, we cannot say that striking a passenger in the face with a blunt object was within the scope of employment, even in 1882.    Rather, the brakeman had committed a battery at the suggestion that he was a crook.    Accordingly, the holding in *Flexman* clearly allows vicarious liability for a common carrier in instances where the employee acted outside the scope of employment.

¶ 50    Moreover, *Flexman* is supported by the Restatement, which provides exceptions to the general rule that an employer is not liable for an employee's acts outside the scope of employment.  Restatement (Second) of Agency § 219 (1958).  The Restatement provides:

"(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, *unless*:

(a) the master intended the conduct or the consequences, or

(b) the master was negligent or reckless, or

(c) *the conduct violated a non-delegable duty of the master*, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."  (Emphases added.)  *Id.*

In other words, the Restatement provides that, if the conduct of an employee violates a nondelegable duty of the employer, the employer may be liable regardless of whether the employee's misconduct took place within the scope of employment.

¶ 51    The Restatement is consistent on this point, stating that a principal that owes a nondelegable duty of care to others may be liable for harm caused to others by its agents, even for conduct committed outside the scope of employment.  Restatement (Second) of Agency § 214 cmt. a (1958).  The Restatement provides the following illustration:  "P, a railroad, employs A, a qualified conductor, to take charge of a train.  A assaults T, a passenger.  P is subject to liability to T."  Restatement (Second) of Agency § 214 cmt. e, illus. 3 (1958).  This

illustration closely matches the fact pattern of *Flexman*. It also closely resembles the scenario presented in the case before us.

¶ 52    Importantly, Illinois courts recognize that a common carrier's high duty of care is a nondelegable duty. See *Mueller*, 287 Ill. App. 3d at 345; *Gordon v. Chicago Transit Authority*, 128 Ill. App. 3d 493, 501 (1984); see also *Jardine v. Rubloff*, 73 Ill. 2d 31, 45 (1978) (explaining that jury finding of negligence by the common carrier but not the other party could be explained by the difference in duty—the common carrier had nondelegable duty to exercise highest care, whereas the other party had to exercise only ordinary care). We have already established that a private transporter of students owes the same duty of care as a common carrier. Therefore, it owes a nondelegable duty of care and, consistent with *Flexman*, *Green*, and the Restatement, an employer with a nondelegable duty of care is liable for an employee's misconduct outside the scope of employment.

¶ 53    First Student counters that the nondelegable duty of a common carrier does not extend to the situation here, because, per *Mueller*, sexual assault is not related to the operation of a bus *per se*. *Mueller*, 287 Ill. App. 3d at 345. However, First Student's reliance on *Mueller* is misplaced because the sexual assault in *Mueller* did not occur while the employee was transporting the student. In *Mueller*, the school employee was a wrestling coach who would customarily drive various team members home. After one practice, the coach drove the plaintiff, one of the team managers, to the coach's home to work on the personnel roster. *Id.* at 339. The plaintiff alleged that the coach then sexually assaulted her at his home. *Id.* The court never analyzed whether the coach was acting as a common carrier, but it assumed that, even if the coach had been acting as a common carrier via his " 'substitute driver' " role, the school could not be held vicariously liable. *Id.* at 344-45. The court recognized that a common carrier has a nondelegable duty of care, but it

would not extend the duty to "situations where, as here, it is not the operation of the bus *per se* that resulted in injury." *Id.* at 345.

¶ 54 The issue faced in *Mueller* is comparable to the primary issue in *Garrett*—that is, what duty the bus driver owed students *after* they had alighted from the bus. In *Garrett*, the court explained that a common carrier's heightened standard of care did not extend beyond the operation of the bus *per se*, such that the duty to render that degree of care terminated when the student had alighted and reached the shoulder of the road, a reasonable place of safety. *Garrett*, 139 Ill. App. 3d at 578. To wit, "[o]nce a passenger has safely alighted, the carrier owes only a duty of ordinary care." *Id.* at 575. *Mueller* is similar to *Garrett* insofar as the injury took place after transportation was complete. In other words, the coach in *Mueller* was not acting as a carrier when the injury occurred, and the unique protections afforded to passengers of a common carrier did not apply. *Mueller*, 287 Ill. App. 3d at 345 (explaining that a common carrier has the duty to operate a bus with the highest degree of care, but the duty does not extend to situations where it was not the operation of the bus *per se* that resulted in the injury). Here, because the alleged sexual assault took place on the bus while Sanchez was acting as a bus driver, *Mueller* does not control. Rather, *Green* and *Flexman* control, and, as discussed, both would permit vicarious liability.

¶ 55 Tying everything together, we hold that: Illinois courts recognize that common carriers owe their passengers a heightened duty of care; a private contractor transporting students is, for all intents and purposes, acting as a common carrier; a common carrier's heightened duty of care is nondelegable; and an employer may be liable for its employees' misconduct outside the scope of employment if it has a nondelegable duty of care. To hold otherwise would be an unjustified departure from our precedent since *Flexman*. A contrary holding would also conflict with the

strong Illinois public policy to ensure the safety of school children on buses. Permitting vicarious liability in this situation promotes the utmost care by school districts in contracting for student busing services.

¶ 56 For all these reasons, we hold that a private contractor may be liable for an employee's sexual assault of a student he transports, even though such a sexual assault is outside the scope of employment.

¶ 57 The second certified question is answered in the affirmative.

¶ 58 III. CONCLUSION

¶ 59 We answer both certified questions in the affirmative: (1) a private contractor for student busing services owes passengers the same high duty of care as a common carrier; and (2) a private contractor for student busing services may be liable for an employee's sexual assault of a passenger, even though it is outside the scope of employment, because the contractor owes its passengers a nondelegable duty of care. The trial court's January 21, 2015, order denying First Student's combined motion to dismiss is affirmed, and we remand the cause for further proceedings consistent with our answers.

¶ 60 Certified questions answered; order affirmed; cause remanded.